Filed 2/10/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re GRACE P. et al., Persons Coming Under the Juvenile Court Law. | B275689 |
| _____ | (Los Angeles County Super. Ct. No. DK00969) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| M.P. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robert Draper, Judge.  Reversed and remanded with directions.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant Father M.P.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant Mother L.R.

Mary C. Wickham, County Counsel, R. Keith Davis, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Father and Mother appeal from the juvenile court's order terminating parental rights to six-year-old daughter, Grace, five-year-old son, Marco, and three-year-old son, Michael, pursuant to Welfare and Institutions Code[1] section 366.26. Father argues that the court erred in finding the beneficial parent-child relationship exception to termination did not apply and in denying him a contested hearing on that issue. Mother did not request a hearing to assess her relationship with the children and does not have an independent basis for preventing termination of her parental rights. Mother adopts Father's arguments on appeal, asserting that the court erred in denying Father a contested hearing.

In a matter of first impression, we reverse because the juvenile court abused its discretion in denying Father a contested selection and implementation hearing under section 366.26. When, as here, a parent has consistently and regularly visited his or her children and at the selection and implementation hearing, offers testimony regarding the quality of their parent-child relationship and possible resulting detriment that would be caused by its termination, a juvenile court abuses its discretion if it denies a contested hearing on the beneficial parent-child relationship exception. We reverse and remand for the juvenile court to conduct the contested hearing and determine, in the context of all of the evidence before it, whether a beneficial parent-child relationship exists and prevents the termination of parental rights pursuant to section 366.26(c)(1)(B)(i).

---

[1] All subsequent statutory references are to the Welfare and Institutions Code.

## FACTS AND PROCEDURAL BACKGROUND

In September 2013, the court granted the Department of Children and Family Services's (DCFS) request to detain Grace and Marco after concluding they were at high risk of abuse due to the parents' ongoing domestic violence, Father's abuse of marijuana, their exposure to Father's drugs, and Father's gang-related activities (Father is a member of the Mara Salvatrucha gang). Because Mother continued to associate with Father, the court detained Michael in February 2014, shortly after his birth. In April 2014, the children in this case were adjudged dependents of the juvenile court as a result of Father and Mother's domestic violence and Father's abuse of marijuana.

Upon detention, DCFS assessed that the two older children had serious mental health, emotional, and developmental issues. The eldest, Grace, was with her parents for the first two years and 11 months of her life. All three children were placed in the same foster home and were enrolled in therapy and services to address their mental health, behavioral, and developmental needs. Over the course of this nearly three-year long dependency case, the children's issues were largely corrected via participation in services and the nurturing environment created by the foster family. Unfortunately, the children never reunited with their parents.

Throughout the dependency case, Father was in and out of jail as a result of his gang activities. Although he completed a substance abuse program, he did not complete the court-ordered domestic violence counseling or drug testing. His weekly visitation with all three children remained monitored throughout the case, but was consistent. Early on, the visits were three hours per week. The foster parent, who monitored the visits, repeatedly reported that Father was always on time, interacted well with the three children and that he was attuned to their

needs. The foster parent reported to DCFS that Father dedicated himself to all three children during the visits and the children were bonded with him. During visitation, he played with them, fed them, and changed Michael's diapers. Father also maintained daily and, then later, weekly phone contact with the children and the children stated that they missed their parents.

At the section 366.26 hearing, Father's counsel requested a contested section 366.26 hearing to determine the applicability of the beneficial parent-child relationship exception to termination of parental rights.[2] Counsel asserted that Father has consistently and regularly visited all three children, those visits were positive, he actively engaged each child during visits, and he has been attuned to their individual needs. Counsel stated that Father

> "would testify that during his regular visits with the kids, he talks to them about school. He has on occasion redirected them with regards to behavioral issues. He brings food for the children. He also does play with them. He tells them he loves them and they do articulate that they love him as well and that the children call him papa and that they do not call anyone else papa, so he does believe that the parent-child exception applies. The children do perceive him in a parental role, and he has demonstrated parental capacity during these visits. He also believes that Grace would testify that she enjoys the visits, that she would like them to continue, and that she does see him as a father figure and would be sad if he were not her father."

---

[2] Mother did not request a hearing on the applicability of this exception as to her relationship with the children. Mother's parental relationship with the children is not at issue in this appeal. Nonetheless, Father's ability to successfully assert a beneficial parental relationship impacts whether Mother's (as well as Father's) parental rights are terminated.

4

Mother's counsel joined in Father's request for Father to have a contested hearing.

After the court ascertained from counsel that Father visits the children weekly and that the visits are monitored, the court indicated that the offer of proof was insufficient. The court stated,

> "Accepting your offer of proof at full value, I would have to find that what father has described is a stronger bond and more important bond than they have with their caregivers, and I don't believe based on the evidence that you have suggested, I would obviously make that finding. I'm specifically referring to the statement in *M.W.*[3] that the father would need to prove that the child has developed such a substantial positive relationship with the father that the child would be greatly harmed or there would be substantial detriment to the child if parental rights were terminated, and that the court in *M.W.* expressly directs the court to consider the strength of the relationship with the children in determining what would be the most appropriate life for the children.
>
> "So, I believe, that your offer of proof is inadequate and I'm denying the request for a contest."

The court then admitted DCFS's reports into evidence, and found by clear and convincing evidence that the children were adoptable and that there were no impediments to adoption. The court found that no exception to adoption applied and terminated the parental rights of Father and Mother to the children.

---

[3] Based on our own research, we believe that *M.W.* refers to *In re M.W.* (2015) 238 Cal.App.4th 1444. This case is inapt as it addresses jurisdictional findings, not termination proceedings.

5

**DISCUSSION**

Father appeals the termination of his parental rights arguing that the court erred in denying him a contested selection and implementation hearing to present evidence on the applicability of an exception to termination of parental rights. Mother also appeals, joining in Father's arguments but not asserting any other basis for our review. We review the court's denial of a contested hearing for an abuse of discretion. (*In re A.B.* (2014) 230 Cal.App.4th 1420, 1434; *Ingrid E. v. Superior Court* (1999) 75 Cal.App.4th 751, 759.)

**1.      A Parent's Right to Present Evidence at the Selection and Implementation Hearing**

"The selection and implementation hearing under section 366.26 takes place after the juvenile court finds that the parents are unfit and the child cannot be returned to them." (*In re Josue G.* (2003) 106 Cal.App.4th 725, 732.) Section 366.26 governs termination of parental rights. Subdivision (b) of this section states: "At the hearing, . . . the court . . . shall review the report [required by statute], shall indicate that the court has read and considered it, *shall receive other evidence that the parties may present*, and then shall make findings and orders." (§366.26, subd. (b), italics added.)

If the parents have failed to reunify and the court has found the child likely to be adopted, the burden shifts to the parent's to show exceptional circumstances exist such that termination would be detrimental to the child. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 574 (*Autumn H.*).) Parents can request a contested hearing on this issue to present evidence supporting their claim that an exception to termination of parental rights exists.

6

Here, the parents contend that the juvenile court violated their due process rights when it denied Father's request for a contested hearing on the application of the beneficial parent-child relationship exception to the termination of parental rights under section 366.26(c)(1)(B)(i). (See § 366.26, subd. (c)(1)(B)(i) [The juvenile court shall not terminate parental rights where it "finds a compelling reason for determining that termination would be detrimental to the child [because] [¶] (i) The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."].)

A parent has a right to due process at a section 366.26 hearing resulting in the termination of parental rights, which includes a meaningful opportunity to be heard, present evidence, and confront witnesses. However, these procedural rights are subject to evidentiary principles. Due process is "a flexible concept dependent on the circumstances." (*In re Tamika T.* (2002) 97 Cal.App.4th 1114, 1122.) Since due process does not authorize a parent "to introduce irrelevant evidence, due process does not require a court to hold a contested hearing if it is not convinced the parent will present relevant evidence on the issue he or she seeks to contest." (*Ibid.*) "The trial court can therefore exercise its power to request an offer of proof to clearly identify the contested issue(s) so it can determine whether a parent's representation is sufficient to warrant a hearing involving presentation of evidence and confrontation and cross-examination of witnesses." (*Ibid.*) The parent's offer of proof "must be specific, setting forth the actual evidence to be produced, not merely the facts or issues to be addressed and argued." (*Id.* at p. 1124.)

## 2.	The Offer of Proof for the Beneficial Parent-Child Relationship Exception to Termination of Parental Rights

Thus, at issue is whether Father's offer of proof was sufficient to warrant a contested hearing on the applicability of section 366.26(c)(1)(B)(i), i.e. the beneficial parent-child relationship exception (also known as the parental visitation exception).  Application of the beneficial parent-child relationship exception consists of a two-prong analysis.  (*In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 449-450.)  The first prong inquires whether there has been regular visitation and contact between the parent and child.  (*Id.* at p. 450.)  The second asks whether there is a sufficiently strong bond between the parent and child that the child would suffer detriment from its termination. (*Ibid.*)

The first prong is quantitative and relatively straightforward, asking whether visitation occurred regularly and often.  (See 1 Seiser et. al., Cal. Juvenile Courts Practice and Procedure (Matthew Bender 2014) Selecting and Implementing an Alternative Permanency Plan § 2.171[5][b][ii][A], pp. 2-590 to 2-591 ["The first prong is somewhat self-explanatory. The second is not."].)  It is not an inquiry into the quality of visitation; this prong simply evaluates whether the parent consistently had contact with the child.  (*In re I.R.* (2014) 226 Cal.App.4th 201, 212 ["Regular visitation exists where the parents visit consistently and to the extent permitted by court orders."].)

In contrast, the second prong involves a qualitative, more nuanced analysis, and cannot be assessed by merely looking at whether an event, i.e. visitation, occurred.  Rather, the second prong requires a parent to prove that the bond between the parent and child is sufficiently strong that the child would suffer detriment from its termination.  (*In re Aaliyah R., supra,* 136 Cal.App.4th at p. 450).  In applying this exception, the court must take into account numerous variables, including but not

8

limited to: 1) the age of the child, 2) the portion of the child's life spent in the parent's custody, 3) the " 'positive' " or " 'negative' " effect of interaction between parent and child, and 4) the child's unique needs. (*Autumn H., supra,* 27 Cal.App.4th at p. 576.).

This is particularly challenging because, as the court in *Autumn H.* noted, "[i]nteraction between natural parent and child will always confer some incidental benefit to the child," requiring the balancing of the natural parent relationship against the benefit of a stable, permanent adoptive home. (*Autumn H., supra,* 27 Cal.App.4th at p. 575.) The application of the beneficial parent relationship exception requires a robust individualized inquiry given that "[p]arent-child relationships do not necessarily conform to a particular pattern," and no single factor–such as supervised visitation or lack of day-to-day contact with a noncustodial parent–is dispositive. (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350; *In re S.B.* (2008) 164 Cal.App.4th 289, 294-300 [reversing termination of parental rights even though father only had supervised visitation with daughter]; *In re Casey D.* (1999) 70 Cal.App.4th 38, 51 ["Day-to-day contact is not necessarily required, although it is typical in a parent-child relationship."].)

## 3. Father's Offer of Proof was Sufficient to Warrant a Contested Hearing

In this case, Father's offer of proof with respect to the first prong (about visitation and contact) was undisputedly sufficient: the proposed testimony addressed the consistency of his weekly visitation with the children. In addition, it appears from the record that DCFS's reports likewise support the conclusion that Father maintained regular visitation. The juvenile court also acknowledged this fact and stated that, "Father has had regular contact with the child."

9

As to the second prong, Father offered his testimony about the positive quality of his visitation, how he parented all three children during visits, and how the children considered him to be a father figure. Father also offered Grace's testimony regarding how she enjoyed visits with Father, saw Father as a parent, and would be sad if visitation with Father ended.[4] The juvenile court opined this offer of proof was not sufficient to warrant a contested hearing. We disagree.

By comparison, *In re Jeanette V.* (1998) 68 Cal.App.4th 811, is instructive. There, as here, the appellant father sought a contested section 366.26 hearing to prove that the beneficial parent-child relationship exception proscribed termination of his parental rights. The father solely sought to cross-examine the social workers regarding their reports on the quality of his visitation. (*Id.* at p. 815.) However, the father had no contact with the child for more than two years and thus, "could not deny [his] failure to satisfy the 'maintain regular visitation and contact' element, and could only suggest that cross-examination [of the social worker who authored the reports] would reveal something about [the father's] visitation during an unspecified earlier period." (*Id.* at p. 817.) The appellate court noted that the beneficial relationship exception required *both* prongs and thus the trial court did not err in denying the contested hearing. (*Ibid.*) Essentially, evidence of the nature of the visits would be ineffective in proving a beneficial parent-child relationship, where the parent failed to maintain consistent and frequent

---

[4] Other than his own testimony, Father only offered testimony from Grace. That he did not offer testimony from the two younger children does not undercut his claim of a beneficial parental relationship to all three children. The other two children were very young, and Father's testimony was intended to address his relationship with all three children.

10

contact with the child. (See *In re I.R., supra,* 226 Cal.App.4th at p. 212 [Significant lapses in visitation "fatally undermine any attempt to find the beneficial parental relationship exception."]; *In re C.F.* (2011) 193 Cal.App.4th 549, 554 ["Sporadic visitation is insufficient to satisfy the first prong of the parent-child relationship exception to adoption."].)

In contrast, since Father satisfied the first prong in the case at bar, his proffered evidence was consequential to and probative of the issue of his relationship with the children and the detriment they would suffer by its severance. As we mention above, this qualitative inquiry regarding the nature of the relationship between the parent and child cannot be as directly and summarily assessed as the first prong regarding contact. The second prong requires the court's careful assessment of the child's relationship with the parent. Because this is an individualized inquiry and parenting styles and relationships differ greatly between families, the juvenile court must take caution before denying a contested hearing on this issue when a parent has clearly maintained regular contact with the child.

We note even when a parent makes a prima facie case and obtains a contested selection and implementation hearing under section 366.26, the juvenile court continues to exercise its discretion to limit the hearing to relevant evidence. (See *Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736, 758 [ A trial court has " 'inherent power to control litigation.' "]; *In re Tamika T., supra,* 97 Cal.App.4th at p. 1122.) In addition, that a parent satisfies a prima facie showing does not guarantee the court finding the existence of the exception: the court may still find that the parent-child relationship is not significant enough to "outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*Autumn H., supra,* 27 Cal.App.4th at p. 575.) The contested hearing solely provides

11

the parent the opportunity to make his or her best case regarding the existence of a beneficial parental relationship that has been fostered by the continued and regular contact.

DCFS argues that the offer of proof was insufficient because the proposed testimony would not provide new information to the court since DCFS's reports documented Father's interactions with the children.  DCFS also argues that based on its own reports, Father was incapable of proving a sufficiently strong relationship with the children to satisfy the exception.  DCFS's arguments are based entirely on the evidence it offered at the selection and implementation hearing.  Father's proposed evidence, which purported to address the existence of a beneficial parent-child relationship, was not admitted.  Without such evidence, we cannot conclude that Father was incapable of proving the exception.  Without the evidence, we cannot conclude that Father's and Grace's testimony would be duplicative of the DCFS reports.  On the contrary, the offer of proof indicated that Father and Grace would expound on the details of the relationship that has been positively (though concisely) documented by DCFS.

Based on the foregoing analysis, we conclude that the trial court abused its discretion in denying the contested selection and implementation hearing.

## DISPOSITION

We reverse the termination of parental rights. We remand for the juvenile court to conduct the contested hearing and determine whether a beneficial parent-child relationship exists and prevents the termination of parental rights pursuant to section 366.26(c)(1)(B)(i). We express no opinion how the trial court should exercise its discretion.

**CERTIFIED FOR PUBLICATION**

GOSWAMI, J.[*]

We concur:

ALDRICH, Acting P. J.

LAVIN, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.