Filed 11/3/20  In re A.G. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| IN RE A.G. et al., Persons Coming Under The Juvenile Court Law. _____ SANTA BARBARA COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v. R.G., et al., Defendants and Appellants. | 2d Juv. No. B305272 (Super. Ct. Nos. 1506280-A, 1506281-A, 1506282-A, 1506283-A, 19JV00371) (Santa Barbara County) |

R.G. (father) and A.F. (mother) appeal the juvenile court's order terminating their parental rights to their minor children A.G., D.G., and G.G. with a permanent plan of adoption.  (Welf. &

Inst. Code,[1] § 366.26.)  Mother also appeals the order terminating her parental rights to her minor children S.C. and D.R. with adoption as the permanent plan.  Mother and father contend the court erred in denying a contested hearing to determine whether the beneficial parent-child relationship exception to adoption (*id.*, subd. (c)(1)(B)) applied.  They also contend the court erred in finding that the Indian Child Welfare Act (ICWA) (25 U.S.C.A. § 1901, et seq.) did not apply.

We agree that the court abused its discretion in denying mother a contested section 366.26 hearing.  "When, as here, a parent has consistently and regularly visited his or her children and at the selection and implementation hearing, offers testimony regarding the quality of their parent-child relationship and possible resulting detriment that would be caused by its termination, a juvenile court abuses its discretion if it denies a contested hearing on the beneficial parent-child relationship exception."  (*In re Grace P.* (2017) 8 Cal.App.5th 605, 608-609 (*Grace P.*).)  Accordingly, we reverse and remand for the court to conduct such a hearing.  Otherwise, we affirm.

## FACTS AND PROCEDURAL HISTORY
### *Dependency Petitions; Detention*

Appellants are the natural parents of A.G. (born in July 2014), D.G. (born in July 2014), and G.G. (born in August 2017).

---

[1] All Statutory references are to the Welfare and Institution Code.

Mother is also the natural parent of L.E.[2] (born in November 2005), S.C. (born in May 2011), and D.R. (born in January 2013).

In October 2016, Santa Barbara County Department of Social Services, Child Welfare Services (DSS) detained A.G., D.G., L.E., S.C., and D.R. based on allegations that mother and father were using drugs and engaging in criminal activity and domestic violence. At the six-month status review hearing, the children were returned to mother and father with family maintenance services. In December 2017, the matter was dismissed and the children were returned to mother and father's legal and physical custody.

In September 2019, DSS filed another dependency petition as to all six children. The petition alleged among other things that on August 25, 2019 the children witnessed mother, who suffers from bipolar disorder, attempt to commit suicide by ingesting various pills. Father was aware of the suicide attempt but "did not seek out appropriate medical attention for the mother, resulting in 13-year-old [L.E.] having to reach out to others so that her mother would receive li[f]e-saving medical attention." Mother admitted using methamphetamine. Both parents have extensive histories of domestic violence, child welfare referrals, and criminal activity including possession and being under the influence of a controlled substance. In addition, appellants each previously had their parental rights terminated to other children (A.R., C.R., and Al.G.) who were subsequently adopted.

---

[2] At the conclusion of the section 366.26 hearing, the court selected legal guardianship as the permanent plan for L.E. Mother does not challenge this aspect of the court's order.

L.E. was placed with her maternal uncle in Goleta, S.C. and D.R. were placed with D.R.'s paternal aunt in Lompoc, and D.G., A.G. and G.G. were placed with their paternal uncle and his wife in Lompoc.

At the detention hearing, the court stated, "I have to ask in every case whether a child is or may be a Native American Indian child. There have been prior cases, but I have to ask each and every time. I'll ask you at this time if you have any Native American Indian heritage and, if so, what tribe." Father replied that he had no such heritage. Mother replied "I believe so" and identified the tribe as "Chumash." The court asked mother "[i]s that the Coastal Chumash, or is that the Federally recognized tribe, which is the Santa Ynez Band of Chumash?" Mother replied, "Coastal." The court then added, "We went through this last time and the tribe was found not to be Federally recognized and not Indian children, but still we have to notice the Bureau of Indian Affairs."

At the conclusion of the hearing, mother and father submitted on temporary detention, the children were ordered detained in out-of-home care, and the matter was set for a jurisdiction hearing.

### Jurisdiction and Disposition

In its jurisdiction report, DSS recommended that the court find the allegations of the dependency petition true and that the children remain in out-of-home care pending disposition. DSS also asked the court to find that ICWA did not apply to the children. DSS noted that S.C. and D.R.'s fathers had both denied Native American heritage. DSS further noted that in the prior dependency case, it had received a letter from the Santa Ynez Band of Chumash Indians indicating that A.G., D.G., L.E., S.C.,

and D.R. were neither members of the tribe nor eligible for enrollment. The Coastal Chumash tribe, of which mother claimed heritage, is not a federally recognized Indian tribe.

At the jurisdiction hearing, the court granted DSS's request for judicial notice of the records in the prior dependency proceedings and found that ICWA did not apply as to all the children except S.C., for whom such a finding was still pending.

In its report for the disposition hearing, DSS recommended that the children be declared dependents of the juvenile court and that both mother and father be bypassed for reunification services pursuant to section 361.5, subdivisions (b)(11) and (b)(13).[3] At the conclusion of the hearing, counsel for DSS stated that the parties had reached a settlement whereby mother and father would withdraw their contest to DSS's recommendations in exchange for DSS's agreement that they would each receive

[3] Section 361.5, subdivision (b)(11) provides that reunification services need not be provided when the court finds by clear and convincing evidence "[t]hat the parental rights of a parent over any sibling or half-sibling of the child had been permanently severed, . . . and that, according to the findings of the court, this parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from the parent." Subdivision (b)(13) states that reunification services may be bypassed where parent "has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought the child to the court's attention, or has failed or refused to comply with a program of drug or alcohol treatment described in the case plan required by Section 358.1 on at least two prior occasions, even though the programs identified were available and accessible."

5

three hours of weekly supervised visits with the children. The court entered orders accordingly and set the matter for a section 366.26 hearing.

### *Section 366.26 Hearing; Offer of Proof*

In its report for the section 366.26 hearing, DSS recommended that parental rights be terminated as to all five of mother and father's children with a permanent plan of adoption for all of the children. Mother and father both requested that the matter be set for a contested hearing. At DSS's request, the court ordered mother and father to file offers of proof for a contested hearing. The court also found that ICWA did not apply as to S.C.

Prior to the section 366.26 hearing, mother filed an "offer of proof to outline, in summary form, some of the evidence that will be presented to the Court on the specific issue of whether there exists a 'beneficial relationship[]' between mother and children pursuant to . . . [s]ection 366.26(c)(1)(B)(i)." Mother offered she would give testimony establishing among other things that (1) "[m]other is consistent with visitations and comes prepared and is engaged throughout the visits"; (2) "[m]other has been clean and sober since October 4, 20[19], is attending substance abuse treatment at Lompoc Recovery Center, and meets with a Sponsor on a regular basis"; (3) "[m]other is prepared and lovingly interacts with all her children during visits"; (4) "[m]other and [the] children have open communication and during visits talk about school and daily life"; (5) "[m]other is able to assist all the children when they are in need of assistance"; (6) "[d]uring visits the children look to mother to meet their emotional needs" and that "[m]other can provide numerous examples of when the children look to [her] for their emotion[al] needs[,] i.e., during sibling disagreements"; (7) "[G.G.] runs to mother during visits"

6

and "looks to his mother when needing to be soothed"; (8) "[t]he children reach out to their parents for affection at the beginning and end of the visits"; and that (9) "[d]espite having only hours of visitation a month the children continue to look to mother for emotional and physical support."

Mother also offered that she would elicit testimony from the social worker to establish that "during a visit on November 7, 2019, when asked about what [D.R.] and [S.C.] though about the plan to stay in their current placement[,] they became sad and asked when they would get to be with their mom. [S.C.] expressed further sadness about the plan meaning she cannot bet to see their mother every day." Mother also submitted documentary evidence of her ongoing participation in drug treatment and parenting classes. She went on to assert that her offer of proof was "sufficient to justifying a full evidentiary hearing per the standard articulated in *Grace P.*" Father did not file an offer of proof.

At the hearing, counsel for DSS conceded that mother had maintained regular visitation with children. Counsel asserted, however, that mother's proffered evidence "does not rise to the level to substantiate her burden and . . . does not outweigh the benefit of permanency for the children to be placed in adoption." Counsel also claimed that mother's offer of proof "does not describe any evidence that is different or in addition to what is already set forth in the social worker's report." Counsel added "there's nothing to indicate that what will be shown will distinguish [mother's] interaction with her children from any other caring, loving adult to support a finding that this specific relationship is a beneficial relationship to the children, that that

7

warrants delaying permanency for the children who are in adoptive homes."

Mother's attorney countered "there's nothing in the reports that talks about any other interactions with her children and then running to this other person. It's specifically to the mother. I can't argue in the negative, something that doesn't appear in the reports." The court replied: "That would not be the standard. Even if they ran to no one else and only ran to the mother, is that enough to show beneficial relationship? Based upon the offer of proof, it's not specific enough. The request for hearing is denied, as the offer of proof[] I find to be insufficient. There's not enough that's been demonstrated what specific evidence you would intent to show to justify having the hearing."

Father's counsel acknowledged that no offer of proof was filed on father's behalf and added, "I'm not arguing whether or not we would have been able to provide an offer of proof." After noting father's ongoing efforts to correct the issues that led to the children's removal, counsel stated "the reason I didn't provide an offer of proof to the Court is the very positive things that he's been doing don't address any of the particular factors in the exceptions [to adoption]." The court replied: "[T]he preference at this stage is adoption, unless there's an exception and that exception has to be clearly and strongly demonstrated to be must more than the legal preference for adoption. There's no offer of proof that was made by the father. I assume you can't meet it. Mother's I find is insufficient." The court proceeded to terminate parental rights to A.G., D.G., G.G., S.C., and D.R. with a permanent plan of adoption. L.E. was placed in a legal guardianship.

## DISCUSSION
### *Mother's Offer of Proof for Contested Hearing*

Mother contends the juvenile court abused its discretion and violated her due process rights by refusing to hold a contested section 366.26 hearing to determine whether the beneficial parent-child relationship exception to adoption applied. She claims that her offer of proof was sufficient to warrant such a hearing because it set forth evidence relevant to her claim that the exception applied. We agree.

"'The selection and implementation hearing under section 366.26 takes place after the juvenile court finds that the parents are unfit and the child cannot be returned to them.' [Citation.] Section 366.26 governs termination of parental rights. Subdivision (b) of this section states: 'At the hearing, . . . the court . . . shall review the report [required by statute], shall indicate that the court has read and considered it, *shall receive other evidence that the parties may present*, and then shall make findings and orders.' [Citation.]" (*Grace P., supra*, 8 Cal.App.5th at p. 611.)

"If the parents have failed to reunify and the court has found the child likely to be adopted, the burden shifts to the parents to show exceptional circumstances exist such that termination would be detrimental to the child. [Citation.] Parents can request a contested hearing on this issue to present evidence supporting their claim that an exception to termination of parental rights exists." (*Grace P., supra*, 8 Cal.App.5th at p. 611.)

Here, mother sought a contested hearing to present evidence that the beneficial parent-child relationship exception to adoption applied. That exception provides that the juvenile court

9

shall not terminate parental rights where it "finds a compelling reason for determining that termination would be detrimental to the child [because] [¶] (i) The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)

"A parent has a right to due process at a section 366.26 hearing resulting in the termination of parental rights, which includes a meaningful opportunity to be heard, present evidence, and confront witnesses. . . . Since due process does not authorize a parent 'to introduce irrelevant evidence, due process does not require a court to hold a contested hearing if it is not convinced the parent will present relevant evidence on the issue he or she seeks to contest.' [Citation.] 'The trial court can therefore exercise its power to request an offer of proof to clearly identify the contested issue(s) so it can determine whether a parent's representation is sufficient to warrant a hearing involving presentation of evidence and confrontation and cross-examination of witnesses.' [Citation.] The parent's offer of proof 'must be specific, setting forth the actual evidence to be produced, not merely the facts or issues to be addressed and argued.' [Citation.]" (*Grace P.*, *supra*, 8 Cal.App.5th at p. 612.) If the parent's offer of proof is sufficient, the juvenile court's failure to hold a contested hearing amounts to an abuse of discretion. (*Id.* at pp. 611, 614-615.)

"Application of the beneficial parent-child relationship exception consists of a two-prong analysis. [Citation.] The first prong inquires whether there has been regular visitation and contact between the parent and child. [Citation.] The second asks whether there is a sufficiently strong bond between the parent and child that the child would suffer detriment from its

10

termination. [Citation.] [¶] The first prong is quantitative and relatively straightforward, asking whether visitation occurred regularly and often. . . . [¶] In contrast, the second prong involves a qualitative, more nuanced analysis, and cannot be assessed by merely looking at whether an event, i.e. visitation, occurred. Rather, the second prong requires a parent to prove that the bond between the parent and child is sufficiently strong that the child would suffer detriment from its termination. [Citation.] In applying this exception, the court must take into account numerous variables, including but not limited to (1) the age of the child, (2) the portion of the child's life spent in the parent's custody, (3) the '"positive"' or '"negative"' effect of interaction between parent and child, and (4) the child's unique needs. [Citation.]" (*Grace P.*, *supra*, 8 Cal.App.5th at pp. 612-613.) "The application of the beneficial parent relationship exception requires a robust individualized inquiry given that '[p]arent-child relationships do not necessarily conform to a particular pattern,' and no single factor—such as supervised visitation or lack of day-to-day contact with a noncustodial parent—is dispositive. [Citations.]" (*Id.* at p. 613.)

Here, it is undisputed that mother established the first prong of the beneficial parent-child relationship exception by maintaining regular visitation with the children. With regard to the second prong, mother offered to testify among other things that "[d]uring visits the children look to [her] to meet their emotional needs" and that she "can provide numerous examples of when the children look to [her] for their emotion[al] needs[,] i.e., during sibling disagreements." Mother also offered to testify that G.G. "runs to mother during visits" and "looks to his mother when needing to be soothed, " that "[t]he children reach out to

11

their parents for affection at the beginning and end of the visits," and that "[d]espite having only hours of visitation a month the children continue to look to mother for emotional and physical support." Mother further offered she would elicit testimony from the social worker that during a visit on November 7, 2019, D.R. and S.C. expressed sadness when asked about the plan to stay in their placement "and asked when they would get to be with their mom."

The juvenile court nevertheless found that mother's offer of proof was insufficient and accordingly refused to hold a contested section 366.26 hearing. In doing so, the court violated mother's due process rights and thus abused its discretion.

*Grace P.*, *supra*, 8 Cal.App.5th 605, is on point. The father in that case, like mother here, made an offer of proof regarding the beneficial parent-child relationship exception to adoption. As here, it was undisputed that the father had maintained regular visitation with his children. "As to the second prong, Father offered his testimony about the positive quality of his visitation, how he parented all three children during visits, and how the children considered him to be a father figure. Father also offered Grace's testimony regarding how she enjoyed visits with Father, saw Father as a parent, and would be sad if visitation with Father ended. The juvenile court opined this offer of proof was not sufficient to warrant a contested hearing." (*Id.* at p. 614.)

The court of appeal reversed. After recognizing that father's offer of proof merely had to identify evidence that was relevant to his claim that the beneficial-child relationship exception applied, the court of appeal reasoned that "since Father satisfied the first prong [of the exception] in the case at bar, his proffered evidence was consequential to and probative of the

12

issue of his relationship with the children and the detriment they would suffer by its severance. . . .  [T]his qualitative inquiry regarding the nature of the relationship between the parent and child cannot be as directly and summarily assessed as the first prong regarding contact.  The second prong requires the court's careful assessment of the child's relationship with the parent.  Because this is an individualized inquiry and parenting style and relationships differ greatly between families, the juvenile court must take caution before denying a contested hearing on this issue when a parent has clearly maintained regular contact with the child."  (*Grace P.*, *supra*, 8 Cal.App.5th at pp. 614-615.)

In reaching its conclusion, the court of appeal also rejected the Los Angeles County Department of Child and Family Service's [DCFS] arguments that the father's offer of proof was insufficient because (1) "the proposed testimony would not provide new information to the court since DCFS's reports documented Father's interactions with the children"; and (2) "based on its own reports, Father was incapable of proving a sufficiently strong relationship with the children to satisfy the exception."  (*Grace P.*, *supra*, 8 Cal.App.5th at p. 615.)  The court reasoned that "DCFS's arguments are based entirely on the evidence it offered at the selection and implementation hearing.  Father's proposed evidence, which purported to address the existence of a beneficial parent-child relationship, was not admitted.  Without such evidence, we cannot conclude that Father was incapable of proving the exception.  Without the evidence, we cannot conclude that Father's and Grace's testimony would be duplicative of the DCFS reports.  On the contrary, the offer of proof indicated that Father and Grace would expound on

13

the details of the relationship that has been positively (though concisely) documented by DCFS." (*Id.* at p. 615.)

Here, DSS makes similarly-unavailing arguments in asserting that mother's offer of proof was insufficient to warrant a contested hearing. Moreover, DSS ignores *Grace P.*, other than to cite it for the proposition that the juvenile court's order denying such a hearing is reviewed for an abuse of discretion. As *Grace P.* makes clear, the juvenile court abuses its discretion in denying a parent's request for a contested hearing where, as here, the parent files an offer of proof that sets forth "'relevant evidence on the issue he or she seeks to contest.' [Citation.]" (*Grace P., supra*, 8 Cal.App.5th at p. 612.) Mother's offer of proof plainly set forth such evidence. The juvenile court erred in requiring mother to identify evidence sufficient to establish that the beneficial parent-child relationship exception applied. Mother referred the juvenile court to *Grace P.* and the court was bound to follow that decision. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

To the extent DSS relies on cases holding that the juvenile court did not abuse its discretion in finding that the exception did not apply (e.g., *In re Aaliyah R.* (2006) 136 Cal.App.4th 437), those cases are inapposite. Here, as in *Grace P.*, "[mother's] proposed evidence, which purported to address the existence of a beneficial parent-child relationship, was not admitted. Without such evidence, we cannot conclude that [mother] was incapable of proving the exception." (*Grace P., supra.*, 8 Cal.App.5th at p. 615.)

Moreover, mother's proffered evidence was not duplicative of the evidence contained in the relevant reports. The section 366.26 report purports to contain information regarding each

child's statements regarding their placements and prospective adoptions. L.E., however, was the only child asked whether she wanted to continue living with mother and she stated that she did. Mother's parental rights to L.E. were not terminated, and L.E. was placed in a legal guardianship. As to the other children, the report contains no statements regarding their relationships with mother. With regard to eight-year-old S.C. and seven-year-old D.R., the report merely states that the girls "enjoy their placement" and "rated their placement '20' out of a scale of one to ten." As mother stated in her offer of proof, she intended to offer evidence that both children did not want to end their relationship with mother, considered her to be their "mom," and wanted to be with her.

In light of this proffered evidence, mother had a due process right to a contested section 366.26 hearing to address the beneficial parent-child relationship exception to adoption. (*Grace P., supra*, 8 Cal.App.5th at pp. 608-609.) The juvenile court thus abused its discretion in refusing to hold such a hearing. (*Ibid.*) Accordingly, we reverse the order terminating parents rights and remand for further proceedings.[4]

---

[4] For purposes of remand, "[w]e note even when a parent makes a prima facie case and obtains a contested selection and implementation hearing under section 366.26, the juvenile court continues to exercise its discretion to limit the hearing to relevant evidence. [Citations.] In addition, that a parent satisfies a prima facie showing does not guarantee the court finding the existence of the exception: the court may still find that the parent-child relationship is not significant enough to 'outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' [Citation.] The contested

Because we reverse the termination of parental rights as to mother, we must also reverse the termination of parental rights as to father. (Cal. Rules of Court, rule 5.725(a)(1), (2); *In re Mary G.* (2007) 151 Cal.App.4th 184, 208.) To the extent father argues that the juvenile court abused its discretion in denying *him* a contested section 366.26 hearing, the claim is forfeited because he did not file an offer of proof. Although father asserts that an offer of proof "would have been futile" and that evidence of his ongoing efforts to achieve sobriety was relevant to the determination whether the children would benefit from continuing their relationship with him, that evidence was plainly insufficient by itself to demonstrate a prima facie showing for a contested hearing.

### ICWA

Mother and father also contend the juvenile court erred in finding that ICWA did not apply. We conclude otherwise.

"ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes and families by establishing certain minimum federal standards in juvenile dependency cases. [Citations.] ICWA defines an Indian child as any unmarried person who is under age 18 and is either: (1) a member of an Indian tribe, or (2) eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe. [Citation.]" (*In re Shane G.* (2008) 166 Cal.App.4th 1532, 1538 (*Shane G.*).) "When a court 'knows or has reason to know that an Indian child is involved' in a juvenile dependency

_____

hearing solely provides the parent the opportunity to make his or her best case regarding the existence of a beneficial parental relationship that has been fostered by the continued and regular contact." (*Grace P., supra*, 8 Cal.App.5th at p. 615.)

16

proceeding, a duty arises under ICWA to give the Indian child's tribe notice of the pending proceedings and its right to intervene. [Citations.] Alternatively, if there is insufficient reason to believe a child is an Indian child, notice need not be given. [Citations.]" (*Ibid.*)

Circumstances that may provide knowledge or reason to know a child is an Indian child include where "[a] person having an interest in the child . . . informs the court or the county welfare agency . . . or provides information suggesting that the child is an Indian child . . . ." (Cal. Rules of Court, former rule 5.664(d)(4)(A); *Shane G.*, *supra*, 166 Cal.App.4th at p. 1538.) "If . . . circumstances indicate a child may be an Indian child, the social worker must further inquire regarding the child's possible Indian status. Further inquiry includes interviewing the parents, Indian custodian, extended family members or any other person who can reasonably be expected to have information concerning the child's membership status or eligibility. [Citation.] If the inquiry leads the social worker or the court to know or have reason to know an Indian child is involved, the social worker must provide notice. [Citations.]" (*Id.* at p. 1539.)

Here, father disclaimed any Indian heritage. Mother said she "believe[d]" she was descended from the Coastal Chumash tribe, which is not federally recognized; the only federally-recognized Chumash tribe is the Santa Ynez Band of Chumash. The court noted "[w]e went through this last time [i.e., in the prior dependency proceedings] and the tribe was found not to be Federally recognized and not Indian children, but still we have to notice the Bureau of Indian Affairs." At the jurisdiction hearing, the court granted DSS's request for judicial notice of the records in the prior proceedings—which included the Santa Ynez Band of

17

Chumash's response stating that A.G., D.G., L.E., S.C., and D.R. were neither members of the tribe nor eligible for membership—and found that ICWA did not apply as to all the children except S.C., for whom such a finding was still pending due to information regarding her natural father's possible Indian heritage. At the section 366.26, the court found that ICWA did not apply to S.C.

The juvenile court did not err in finding that ICWA did not apply. In making its finding, the court took judicial notice of the record of the prior dependency proceedings in 2017, in which the only federally-recognized Chumash tribe (the Santa Ynez Band of Chumash) sent a response stating that the children were neither members of the tribe nor eligible for membership.[5] In light of this evidence, the court could reasonably find that the ICWA noticing requirements did not apply.

In any event, DSS's investigation into mother's claimed Chumash heritage continued after the court issued its ruling and notices were sent to the Santa Ynez Band of Chumash and the BIA. On November 1, 2019, the social worker contacted the maternal grandmother, through whom mother claimed her Coastal Chumash heritage. The maternal grandmother said "she is in the process of getting a roll number and researching family ancestry" and that "she could not contribute any more information other than what [mother] provided regarding Native

---

[5] The response does not refer to G.G., who was less than a month old at the time and was in mother's custody. Because G.G.'s siblings are not members nor eligible for membership in the Santa Ynez Band of Chumash tribe, the court could reasonably make the same finding as to G.G. (See *Shane G.*, *supra*, 166 Cal.App.4th at p. 1539, fn. 4.)

18

American ancestry." In February 2020, the Santa Ynez Band of Chumash and the BIA were sent ICWA-030 notices by certified mail regarding the section 366.26 hearing. It does not appear from the record that any response was received as to either notice.

"[O]ne of the primary purposes of giving notice to the tribe is to enable the tribe to determine whether the child involved in the proceedings is an Indian child." (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 470.) "Each Indian tribe has sole authority to determine its membership criteria, and to decide who meets those criteria. [Citation.] Formal membership requirements differ from tribe to tribe, as does each tribe's method of keeping track of its own membership." (*In re Santos Y.* (2001) 92 Cal.App.4th 1274, 1300.) Here, DSS sent ICWA notices to the Santa Ynez Band of Chumash and the BIA. Neither the tribe nor the BIA responded. Moreover, it is undisputed that the Santa Ynez Band of Chumash—the only federally-recognized tribe through whom the children might have Indian heritage—sent a response in the prior dependency proceedings indicating that the children were neither members of the tribe nor eligible for membership. Accordingly, any error in the court having ruled that ICWA did not apply prior to the ICWA notices being sent was harmless. (See *In re I.W.* (2009) 180 Cal.App.4th 1517, 1530 [" A deficiency in notice may be harmless when it can be said that, if proper notice had been given, the child would not have been found to be an Indian child and the ICWA would not have applied"], disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989,1010, fn 7; see also *Shane G.*, *supra*, 166 Cal.App.4th at p. 1539 [when agency performed reasonable inquiry and found no reason to believe minor was an Indian child,

"reversing the judgment . . . for the sole purpose of sending notice to the tribe would serve only to delay permanency . . . rather than further the important goals of and ensure the procedural safeguards intended by ICWA"].)

## DISPOSITION

The juvenile court's order terminating parental rights is reversed. The matter is remanded for the juvenile court to conduct a contested section 366.26 hearing as to mother and determine whether the beneficial parent-child relationship exception precludes the termination of parental rights as contemplated in section 366.26, subdivision (c)(1)(B)(i).

NOT TO BE PUBLISHED.


                                        PERREN, J.


I concur:


        TANGEMAN, J.

YEGAN, J., Dissenting:

I respectfully dissent. When a biological parent fails to reunify and the child is likely to be adopted, the parent has a heavy burden of showing the parent-child relationship outweighs the benefits of adoption. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) The trial court, in the exercise of its sound discretion, reasonably concluded that mother's offer of proof, which required a two-prong showing, was insufficient to warrant a contested hearing.

Prong one required that the offer of proof show that mother maintained regular contact or visitation with the child. (*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.) No one disputes that mother did that. She regularly visited the children.

The problem is that mother did not progress beyond supervised visits and there was no offer of proof (prong two) that the bond between mother and the children was so strong that the children would suffer detriment from its termination. (*In re Grace P.* (2017) 8 Cal.App.5th 605, 613.) "[T]he parent must prove he or she occupies a parental role in the child's life, resulting in a significant, positive emotional attachment of the child to the parent. [Citations.]" (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1007.) That requires a significant, positive, emotional attachment *from the child to the parent*. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1315-1316.) "'[F]requent and loving contact'" is not enough. (*Ibid.*)

The written offer of proof states that mother was attending therapy and NA/AA meetings, recently started a parenting class, had been clean and sober for three months, and was attending substance abuse treatment. None of that is relevant to whether children had a significant emotional attachment with mother as a

parent figure. The offer of proof stated that mother lovingly interacts with the children during visits, that mother missed the children, and the children look to mother for emotional and physical support. There is no supporting declaration that says that --- not from mother, a caregiver, a social worker, a therapist, a school teacher, a family member, a relative, a child's playmate, or a sibling. Attached to the written offer of proof is mother's attendance record at NA meetings, a letter that mother attended a three-hour class on substance abuse, and a letter that mother had attended six parenting classes.

There was no proof that severing the parent-child relationship would be detrimental to the children. (See *In re Marcelo B.* (2012) 209 Cal.App.4th 635, 643.) What we know is that the children were detained on August 25, 2019 after mother attempted suicide in front of the children. Mother suffered from untreated mental health issues (bipolar disorder, depression, and anxiety), cried in front of the children, and said she no longer wanted to live. Mother had a history of substance abuse (methamphetamine), had abused and neglected two older children which resulted in the termination of parental rights (2011), had a history of domestic violence, substance abuse, drug related crimes, and had a history of child welfare referrals, a total of 18 from 2003 to 2018.

After the children were detained, there were more reports of domestic violence and sexual abuse. The oldest child said mother was "'taking handfuls of pills'" and yelling about not wanting to live anymore as the children ate dinner at the dining room table. The oldest child called her aunt in Texas, who called 911. The paramedic said mother almost died of a drug overdose and transported mother to the hospital where she tested positive

2

for methamphetamine.  Fortunately, mother did not die.  The children were placed with family relatives who provided the children loving homes.

Mother's trial attorney conceded the offer of proof was skimpy and "I would need the social worker to expound on these visitations, *to tell me what the children have said*."  (Italics added.)  The trial court replied, it "sounds like [a contested hearing is] going to be . . . akin to a deposition or fishing expedition because you don't know what the social worker is going to say."  Counsel conceded that nothing more was being offered, "although I believe there's more."

Offers of proof may not be based on speculation.  (*People v. Babbitt* (1988) 45 Cal.3d 660, 684.)  The social worker reported that the children were bored during visits, that mother missed a December 10, 2019 visit, and that the youngest child did not want to visit mother.  At one supervised visit, mother slept for 40 minutes and claimed she was on new medication.  Mother agreed to sign a medical release to determine what the medication was, but failed to do so.

It is settled that a parent in a dependency case has no due process right to present irrelevant evidence.  (*In re Tamika T.* (2002) 97 Cal.App.4th 1114, 1122.)  Nor is a trial court required to conduct a contested hearing where there is no relevant evidence to consider.  (*Ibid; In re Jeanette V.* (1998) 68 Cal.App.4th 811, 817 ["due process right to present evidence is limited to relevant evidence of significant probative value to the issue before the court"].)  *In re Grace P.*, *supra*, 8 Cal.App.5th at page 612, on which the majority relies, states:  "The parent's offer of proof 'must be specific, setting forth the actual evidence to be produced, not merely the facts or issues to be addressed and

3

argued.' [Citation.]" Here the offer of proof was a Hail Mary. There was no credible showing that any social worker, therapist, caregiver, teacher, relative, family member, neighbor, CASA worker, child, or sibling would testify that severing the parent-child relationship would be detrimental to children and outweigh the benefits of adoption. (See, e.g. *In re Amber M.* (2002) 103 Cal.App.4th 681, 689; *In re Jerome D.* (2000) 84 Cal.App.4th 1200, 1207.)

Finally, it must be observed that the trial court's ruling was addressed to its sound discretion. No abuse of discretion has been shown. The ruling was not arbitrary, whimsical, or capricious. It does not exceed the bounds of reason and we should not substitute our judgment for that of the trial court. (See, e.g., *Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1448-1449.)

I would affirm.

NOT TO BE PUBLISHED.

YEGAN, Acting P. J.

4

Arthur A. Garcia, Judge
Superior Court County of Santa Barbara

_____


Jacques Alexander Love, under appointment by the Court of Appeal, for Defendant and Appellant R.G.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant A.F..

Michael C. Ghizzoni, County Counsel, Lisa A. Rothstein, Senior Deputy Counsel, for Plaintiff and Respondent.