Filed 1/20/23  In re M.R. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.R., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,   Plaintiff and Respondent, v. S.R.,   Defendant and Appellant. | E079802  (Super.Ct.No. J287654)  OPINION |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Affirmed.

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel and David Guardado, Deputy County Counsel for Plaintiff and Respondent.

1

Mother, S.R., appeals from a judgment entered pursuant to Welfare & Institutions Code[1] section 366.26, terminating her parental rights to her minor son, M.R. Mother had a long history of drug use and established a pattern of achieving sobriety but then relapsing, in addition to her poor judgment in making associations with persons actively involved in substance use, resulting in several relapses. Mother's progress had been commendable up to a point, and the originally set hearing pursuant to section 366.26 had been continued when the trial court granted mother's request to modify the prior order setting the selection and implementation hearing by providing additional services. (§ 388.) However, mother relapsed again, and the court proceeded with the section 366.26 hearing and terminated parental rights.

On appeal, mother's sole argument is that the trial court abused its discretion in determining that mother had not established applicability of the parent-child benefit exception to adoptability. We affirm.

## BACKGROUND

The child M.R., born in December 2020, was detained from mother as a result of mother's substance use, ongoing mental health issues (subsequently amended to indicate she had been diagnosed with schizoaffective disorder, bipolar disorder, and Post Traumatic Stress Disorder (PTSD)), and a history of criminal lifestyle with several incarcerations. San Bernardino County Children and Family Services (CFS) received referrals following the minor's birth because mother had admitted to hospital personnel

---

[1] All further statutory references are to the Welfare and Institutions Code.

2

that she had lost parental rights to her older child. Mother tested positive for ecstasy at the time of M.R.'s birth, although the test result report was ambiguous, indicating that the drug was detected but adding a parenthetical notation "(Not Detected)."

A dependency petition was filed on January 5, 2021 alleging that the child was described as a dependent pursuant to section 300, subdivision (b)(1), because of mother's mental illness, developmental disorder, or substance abuse, her history of substance abuse, her ongoing mental health problems, her history of maintaining a criminal lifestyle including several incarcerations; and pursuant to section 300, subdivision (j), because a sibling had been removed from mother's custody in 2015 due to substance abuse and neglect, mother was denied reunification services in that dependency case, and mother's continued drug use exposed the child to similar neglect or abuse. Mother was currently on probation and subject to various probation conditions. The juvenile court ordered detention of M.R.

The original jurisdiction report recommended the court sustain the petition, remove custody of the minor from mother, and deny reunification services pursuant to section 361.5, subdivisions (b)(10) and (b)(11). The report noted that mother had been ordered to test at the detention hearing and that the test results were negative. Mother was already enrolled in services, including substance abuse services, and her criminal history involved mostly minor drug offenses, although there were convictions for assault, automobile taking, bringing controlled substances into jail, and child cruelty.

3

Following a contested hearing, the court sustained the petition, made true findings on all the allegations, and found the child came within the provisions of section 300, subdivisions (b) and (j).

On March 10, 2021, the court conducted the disposition hearing. The social worker submitted additional information to the court explaining that mother was then currently enrolled in parenting classes, anger management, therapy, and outpatient drug treatment, and that she had submitted negative drug tests, except for two positive tests for alcohol. Mother had also submitted to a psychological evaluation, which indicated that while she suffered from diagnoses of PTSD, bipolar disorder (described as provisional), and severe amphetamine use disorder, as well as cannabis use disorder and alcohol use disorder, she suffered from no cognitive deficits that would prevent her from benefitting from services. At the disposition hearing, the court removed custody from mother and placed the child in the relative home of mother's great-aunt. The court also ordered Family Reunification Services (FRS) for mother.

The status review report prepared for the six-month review (§ 366.21, subd. (e)) recommended termination of reunification services and the setting of a selection and implementation hearing pursuant to section 366.26. The report included information about a referral made in May 2021, alleging that mother and her cousins had engaged in sexual abuse of the caregivers' grandchildren, although as to mother, the allegations were apparently inconclusive, with the social worker making the ambiguous notation that "The

4

mother[]'s, allegations were found to be inconclusive and substantiated to the respective children." This information was not further explained.

The report also indicated that mother had been arrested for driving under the influence on May 10, 2021, for which she was ordered to serve 10 days for violation of her probation. Mother was currently living in a sober living environment, but she had tested positive for alcohol on two separate occasions.[2] Mother had not completed the court-ordered services, but she visited regularly and interacted with the child, engaging in caretaking activities, such as changing and feeding the child. The report also noted that M.R. was bonded to his caretakers.

At the six-month review hearing on September 10, 2021, the court terminated FRS after finding by clear and convincing evidence that mother had failed to participate regularly and make substantial progress in her case plan, and the extent of mother's progress was minimal.[3] The court continued the child as a dependent, placed in the home of the relative, and identified a permanent plan of legal guardianship as appropriate.[4]

---

[2] Mother also failed to appear at two other drug tests, although she informed the social worker she had admitted herself into an inpatient program from which she was not permitted to leave in order to submit to a drug test.

[3] Section 366.21 has been amended and will require findings by clear and convincing evidence. (Stats. 2022, ch. 165, § 1, effective January 1, 2023.) Apparently, some juvenile courts are already implementing the change.

[4] The minute order also refers to an order authorizing psychotropic medication for the minor, which appears to be erroneous, given a child of such tender age.

The section 366.26 report was submitted on February 18, 2022, and recommended termination of parental rights, after CFS confirmed with the relative caretakers that they desired to adopt the child. The report indicates the child had been placed with the caretakers for more than one year, describes the relationship between the child and the caretakers as a mutual attachment, and states that termination of parental rights would not be detrimental.

Prior to the section 366.26 hearing, mother filed a petition to modify the prior court order (terminating services and referring the matter for a section 366.36 hearing) pursuant to section 388. The petition alleged that mother had completed the court-ordered services, had maintained her sobriety, and was living in transitional housing where she would be permitted to care for the child. The petition also alleged that mother visited regularly and the child called her "Mom." The court directed CFS to respond to the petition. In its response, CFS acknowledged mother's changed circumstances, as well as the fact the child had formed a "familial attachment" with mother, and recommended an additional six months of services.

At the next hearing date, the court continued the section 366.26 hearing and trailed the hearing on the section 388 petition. The social worker then submitted additional information to the court revealing mother had tested positive for methamphetamine, although the lab report commented that the low level of the substance might be due to environmental exposure. The accidental exposure was attributed to mother's new boyfriend trying to sabotage her efforts at reunification. The social worker expressed

6

concern that mother's choice of companions meant mother was not be benefitting from services. At the evidentiary hearing on the section 388 petition, the court granted mother an additional six months of services and granted authorization for unsupervised visits.

On June 29, 2022, the social worker submitted the 18-month review report. In that report, the social worker acknowledged mother had moved out of the sober living environment, was working part time at a pizza parlor, was attending adult school to obtain her high school diploma, had been discharged from her probation, and continued to receive psychiatric treatment and services. Mother had tested negative for drugs on two occasions but had tested positive for alcohol twice, so the social worker recommended that mother's visits be supervised and reduced in frequency. Of great concern was the fact the mother was living with a new boyfriend, who had a history of alcohol addiction and a related criminal history; mother failed to see the connection between alcohol abuse and substance abuse. The social worker expressed concern about mother's poor choices, which formed a continuing pattern and demonstrated mother had not benefited from services. Although the social worker understood the role of relapse in recovery, mother's extensive history and numerous relapses, along with the age of the child, supported a recommendation of adoption for the child. The report also commented that the child appeared bonded to the caregivers.

On July 6, 2022, the court found clear and convincing evidence that mother had failed to make substantial progress in her case plan, found no substantial probability of return within six months, and terminated services. Mother filed a notice of intent to file a

writ pursuant to California Rules of Court, rule 8.450 on the same date. The writ was denied on July 29, 2022.

On August 17, 2022, the social worker submitted additional information to the court, in which the child was said to be doing well in his adoptive placement with his maternal great-aunt and uncle. At the next court hearing, mother set the section 366.26 hearing as a contested matter and informed the court that the caretakers preferred legal guardianship. After the hearing, the social worker contacted the caretakers to follow up and was informed the caretakers wanted to adopt the child and had never wavered from this position.

The selection and implementation hearing took place on September 16, 2022, at which mother testified she wanted the child to be in a legal guardianship. She stated she visited M.R. regularly, and when she missed a visit, she always made it up. She also testified that the child called her "Mom," and that when she visits the household, she cooks and cares for the child, including bathing him and reading to him. Mother stated she has a bond with the child and the child is bonded to her. In closing arguments, CFS acknowledged that the first prong of the beneficial parent-child exception, regular visitation, had been met, but argued there was no evidence of the second prong, that the child had a substantial emotional attachment to mother or that termination of parental rights would be detrimental.

The court found mother had met the regular visitation prong but had not demonstrated that termination of parental rights would be detrimental. The court found

8

by clear and convincing evidence that the child was adoptable and ordered termination of mother's parental rights. Mother timely appealed.

DISCUSSION

Mother argues that the juvenile court erred in terminating her parental rights because she demonstrated the existence of a beneficial parent-child relationship under the exception found in section 366.26, subdivision (c)(1)(B)(1). We disagree.

"If the parents have failed to reunify and the court has found the child likely to be adopted, the burden shifts to the parents to show exceptional circumstances exist such that termination would be detrimental to the child." (*In re Grace P.* (2017) 8 Cal.App.5th 605, 611, citing *In re Autumn H.* (1994) 27 Cal.App.4th 567, 574; see also *In re L.S.* (2014) 230 Cal.App.4th 1183, 1199.) One such exceptional circumstance applies when the court finds a compelling reason for determining that termination would be detrimental to the child because the parents have maintained regular visitation and contact with the child, and the child would benefit from continuing the relationship. (§ 366.26, subd. (c)(1)(B)(i).)

Interpreting the statute, the California Supreme Court recently discerned three elements the parent must prove to establish the exception: (1) regular visitation and contact, and (2) a relationship, the continuation of which would benefit the child such that (3) the termination of parental rights would be detrimental to the child. (*In re Caden C.* (2021) 11 Cal.5th 614, 631 (*Caden C.*).) Regarding the first element, described by the court as straightforward, the question is just whether "parents visit consistently," taking

9

into account "the extent permitted by court orders." (*Id.* at p. 632, citing *In re I.R.* (2014) 226 Cal.App.4th 201, 212.)

Regarding the second element, the court recommended that courts assess whether "the child would benefit from continuing the relationship." (*Caden C.*, *supra*, 11 Cal.5th at p. 632; see § 366.26, subd. (c)(1)(B)(i).) The court emphasized that the focus is the child, and that the relationship "may be shaped by a slew of factors, such as '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.'" (*Caden C.*, *supra*, at p. 632, quoting *In re Autumn H.*, *supra,* 27 Cal.App.4th at p. 576.)

In considering the second element, the court set out the proper factors for courts to study or consider: (1) the age of the child; (2) the portion of the child's life spent in the parent's custody; (3) the positive or negative effect of interaction between the parent and the child; and (4) the child's particular needs. (*Caden C., supra*, 11 Cal.5th at p. 632; see also *In re M.G.* (2022) 80 Cal.App.5th 836, 850.) Thus, while mother did not need to prove she occupied a "parental role," the parent must show that the child has a substantial, positive, emotional attachment to the parent — the kind of attachment that implies that the child would benefit from continuing the relationship. (*Caden C.*, *supra*, at pp. 632-633, 636; *In re M.G., supra*, 80 Cal.App.5th at p. 848.)

Regarding the third element, that is, whether "'termination would be detrimental to the child' due to the relationship," the Supreme Court indicated a trial court must

10

decide whether it would be harmful to the child to sever the relationship and choose adoption. (*Caden C.*, *supra*, at p. 633, citing § 366.26, subds. (c)(1)(B) & (c)(1)(D).) "Because terminating parental rights eliminates any legal basis for the parent or child to maintain the relationship, courts must assume that terminating parental rights terminates the relationship." (*Caden C.*, *supra*, at p. 633, citing *In re C.B.* (2010) 190 Cal.App.4th 102, 128, *In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1391, and *Troxel v. Granville* (2000) 530 U.S. 57, 66-67 [147 L. Ed. 2d 49, 120 S. Ct. 2054].) The Supreme Court went on to explain that courts need to determine how the child would be affected by losing the parental relationship and "decide[] whether the harm of severing the relationship outweighs 'the security and the sense of belonging a new family would confer.'" (*Caden C.*, *supra*, at p. 633, citing *Autumn H., supra*, 27 Cal.App.4th at p. 575.)

In reviewing a finding of a lack of compelling evidence that termination of rights would be detrimental, we follow a hybrid standard of review. (*Caden C., supra*, 11 Cal.5th at p. 641; *In re G.H.* (2022) 84 Cal.App.5th 15, 26.) As to the first two elements, which involve factual determinations, we apply the substantial evidence standard of review. (*Caden C., supra,* at pp. 639-640.) We review the third element, determining whether termination of parental rights would be detrimental to the child, for abuse of discretion. (*Id*. at p. 640.)

Here, there was no question whatsoever about the first element, insofar as mother visited regularly and interacted with M.R. in a positive manner. But as to the second and third elements, mother failed to sustain her burden.

Mother testified that the child called her "Mom" and he was bonded with her. Yet, there was also evidence that the child had spent nearly the entirety of his young life with his caretakers, with whom he had an emotional attachment, and who could provide stability. There is nothing in the record to suggest that the child suffered emotionally at the end of visits, suggesting that the emotional attachment to mother was not the type of attachment that would outweigh the countervailing benefit of a new, adoptive home. (See *Caden C., supra*, 11 Cal.5th at p. 636.) Therefore, we find substantial evidence to support the trial court's findings on the second element.

As for the third element, we find no abuse of discretion. As to this element, especially considering the best interests of the child and his need for stability at his very young age, and given the evidence on the second element, the court properly determined that terminating parental rights would not be detrimental. The child separated easily from mother, and there was no evidence he cried after leaving visits or had nightmares or any other emotional response that would support a conclusion that termination of parental rights would be harmful or detrimental in any way.

The trial court properly found mother had not satisfied her burden of persuasion as to the existence of a beneficial parent-child relationship.

**DISPOSITION**

The order appealed from is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____
P. J.

We concur:

McKINSTER _____
J.

MILLER _____
J.

13