Filed 4/9/21  H.M. v. Superior Court CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| H.M. et al., | B309102 |
| Petitioners, | |
| v. | Los Angeles County Super. Ct. No. 18CCJP08044A |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS in mandate. Debra Archuleta, Judge. Petitions granted.

Law Office of Thomas Hayes, Nicole J. Johnson and Laura A. Menke for Petitioner H.M.

Law Office of Rachel Ewing, Steven Shenfeld and Christine Hernandez for Petitioner J.R.

Rodrigo Castro-Silva, County Counsel, and David Michael Miller, Deputy County Counsel, for Real Party in Interest Department of Children and Family Services.

## INTRODUCTION

H.M. (mother) and J.R. (father) petition for extraordinary relief from the juvenile court's November 16, 2020 order vacating its prior order returning the minor, N.M., to their custody, terminating reunification services, and setting a selection and implementation hearing under Welfare and Institutions Code section 366.26.[1] The parents contend the court violated their right to due process by denying them the opportunity to challenge new evidence submitted by the Department of Children and Family Services (Department) for the November 16, 2020 proceeding. That evidence indicated that the parents may have violated the court's prior order by having contact with each other. The parents ask us to reverse the November 16 order and remand the matter to the court with directions to conduct a contested hearing and permit the parents to testify and call witnesses. The Department takes no position regarding the issues raised by the parents, and N.M.'s counsel did not file a response to the petitions. We grant the petitions.

## BACKGROUND

Although the underlying proceedings in this dependency case are extensive, the essential facts necessary to our opinion are straightforward.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

Mother has three children: R.M. born in 2009; M.R. born in 2016; and N.M. born in 2017. Mother and father have two children in common, M.R. and N.M.

In December 2018, the Department filed a dependency petition under section 300, subdivisions (a), (b), and (j), on behalf of N.M. The Department alleged N.M. was in danger of suffering physical harm based on domestic violence between mother and father (counts a-1, b-1, j-1), and father's history of substance abuse (counts b-2, j-2). In January 2019, the court found jurisdiction over N.M. based upon four of the five counts asserted in the petition. At the disposition hearing, the court removed N.M. from the parents' custody, awarded them monitored visitation provided they not visit the minor together, and ordered reunification services.

In September 2019, the Department filed a subsequent petition under section 342. The Department alleged that N.M. was in danger of suffering physical harm based on father's sexual abuse of mother's oldest child, R.M. (counts b-1, d-1, j-1). In November 2019, the court sustained the allegations asserted in the subsequent petition, and modified the parents' case plans to include sexual abuse counseling.

On September 15, 2020, the court conducted a review hearing. At that hearing, the parents requested a contested hearing to challenge the Department's recommendation to terminate reunification services and set a section 366.26 hearing. The court granted the parents' requests and scheduled a contested hearing for November 10, 2020. The court also ordered the Department to have the social worker "on call" for November 10, 2020, and ordered it to produce "Title 20s" from February 5, 2020 through November 3, 2020.

## 1.	The November 10, 2020 Review Hearing

On November 4, 2020, a Department social worker—Jenny Becerra— filed a last minute information in connection with the November 10, 2020 hearing. According to Becerra, N.M.'s caregiver believed that the parents continue to have contact with each other because they bring the same toys and bicycle to their visits with N.M. Both parents, however, were observed parenting appropriately. Although mother was attending individual counseling and reported that she talks about the emotional effects of having an open dependency case, she did not disclose to Becerra that she discusses case issues regarding domestic violence or sexual abuse awareness. Father reported that he no longer engages with mother, he had completed a drug and alcohol program, and participated in aftercare programs. Based on Becerra's reunification re-assessment, the Department recommended termination of reunification services for both parents.

The court conducted the 18-month review hearing on November 10, 2020. At the beginning of the hearing, the Department asked the court to terminate family reunification services and set a hearing under section 366.26. After admitting exhibits into evidence, the court allowed both parents to testify. Mother testified by telephone and was assisted by a Spanish language interpreter. Father also testified and was assisted by a Spanish language interpreter. The Department and minor's counsel did not call any witnesses.

Mother testified that she has participated in programs involving sexual abuse awareness, Al-Anon, domestic violence, and parenting. Mother also testified that she no longer lives with father and has no intention of reunifying with him in the future.

4

When asked why it would be different if N.M. were returned to her custody given the court's concerns about violations of court orders, mother responded that she learned from her classes "to first protect my children and also to protect myself."

For his part, father testified that he had been going to alcoholics anonymous meetings for six months and had completed parenting classes. In addition, as a result of completing a 52-week domestic violence program, father learned to control his anger "and not be given [sic] to violence. More than anything to be able to control [his] anger." Father testified that when at work his childcare plan would include his sister or other relatives watching N.M. And as a result of taking sexual abuse classes, father learned to control his mind, correct his way of looking at things, how he acts with other people, and his attitude. He also testified that he was not currently in a relationship with anyone, including mother, and that he had his own house. Father stated that he submits to weekly drug and alcohol testing and calls the social worker to arrange for testing when he is unable to submit to a previously scheduled test.

After the parents testified, minor's counsel asked the court to adopt the Department's recommendations to terminate reunification services and set a section 366.26 hearing. Relying on the social worker's reports, counsel argued that mother had continued to pursue a relationship "of some sort" with father. In particular, counsel drew the court's attention to statements in the report that mother continues to receive money from father to help pay her rent and costs of living. Although acknowledging that mother has reported that father gives money to a pastor who then gives it to mother, counsel contended that mother's reliance

on father for financial support "allows him to have a mechanism of power and control over the mother[.]"

Prior to hearing further argument, the court commented as follows: "[E]ven if mom was taking some money that was delivered from father to the pastor from the church, what is her option?" "She is a woman of limited or no means who's got her own place who is trying to work. And if she needs a helping hand is there some social service agency that's going to give it to her?" "And now we're questioning who was the provider of that money to the pastor that gave it to her?" The court stated, "It's not an issue of power and control. It's a matter of survival for this woman. She doesn't have a lot of options. And it seems to the court, frankly, she's doing everything she can and is supposed to do to try to get her child back."

After the Department pointed out that the last minute information indicated that mother intended to reconcile with father in the future, the court responded, "[I]s it your position that the only way she is going to ever understand and benefit from programs is if she never has any contact with the father of her son for the rest of her life?" The court continued, "In your mind, because she indicated that she might reunify at some point in the future down the road, is that never allowed with a family who has been pulled apart by these kinds of allegations to ever reunify in the Department's mind?"

After hearing argument, the court returned the minor to the parents' custody. The court explained that mother "has done what she was supposed to do." The court noted that despite "difficult obstacles of language, finances, and the pandemic," the parents demonstrated "that they are worthy of having an opportunity to be the parents of this little boy." As for father, the

court stated he "has made tremendous efforts. And we are going to have to make some carve outs to make sure that mother and father stay apart."

As for concerns involving prior violations of court orders, the court stated: "People violate orders all the time. I don't like it. I've been known to speed myself. People violate orders. It's an unfortunate thing and I wish there was more respect for the rule of law. But if father is sending mother [*sic*] to help support her through the pastor so she doesn't end up on [*sic*] a tent down on Hope Street, I have no problem with that. I know some of you do. But I don't. Mistakes have been made with the other children and I want to give this family a chance to try to be a family for [N.M.]."

After making its ruling and ordering the return of the minor to the parents' custody, the court asked the parties to develop a visitation schedule. The court also stated it believed a restraining order with a visitation carve out should be prepared by mother's counsel. At the Department's request, the court stayed its order until November 19, 2020, and ordered the parents to appear at the November 19 hearing. Before concluding the hearing, the court informed the parents, "[Y]ou are not to have contact with each other. I am issuing a stay-away order. You are not to have contact with each other. If I find out that you are violating my orders there's a good chance by the 19th that I will change my mind and not release the child to you." There is no indication in the record that a written restraining order was prepared or served on the parents.[2]

---

[2] The November 10, 2020 minute order states that mother and father are not to come within 100 yards of each other. The court's oral ruling

**2.    The November 16, 2020 Hearing and Writ Petitions**

At 8:30 p.m. on November 10, 2020—i.e., after the court issued its November 10 order—Becerra went to mother's home. In an interim review report filed on November 12, 2020, Becerra stated that she observed mother standing outside father's truck speaking with him while he was inside of the truck parked outside mother's home. Becerra further reported that the parents recognized her. Father drove away and mother was "nervously pacing back and forth between the street towards where [father] drove to and [mother]'s home." A couple of minutes later, mother went inside her home.

On November 12, 2020, the Department filed a "Request for Walk-On" seeking to vacate the court's prior order because the parents had violated the mutual stay-away order issued on November 10.

On November 16, 2020, the court conducted a hearing on the Department's request. The parents and their respective counsel were present. The Department and minor's counsel asked the court to vacate its November 10 order returning the minor to the custody of the parents, terminate reunification services, and set a section 366.26 hearing, based on the parents' violation of the stay-away order.

Mother's counsel denied Becerra's allegations and requested that a hearing be set "so we will have an opportunity to cross-examine the writer of this report, as well as so mother can testify as to her—as to what happened that night, as she does deny this." Counsel further explained, "Right now the court only

_____

at the hearing, however, did not specify any required distance and anticipated the preparation of a written order by mother's counsel.

8

has a 385 stating that the social worker saw the mother and the father. But without more, without also giving mother an opportunity to cross-examine the social worker, it's our position that the court won't be able to make a finding as to credibility without allowing mother to testify and allowing mother to cross-examine the social worker." Father's counsel joined mother's request for a contested hearing and stated that father was not at mother's home as was alleged by Becerra.

The court denied the parents' requests for a contested hearing and vacated its November 10 home-of-parent order. The court also terminated reunification services and scheduled a hearing under section 366.26 for March 15, 2021. The court explained, "On November 10, 2020, my recollection is that both mother and father testified. They had the opportunity to be represented by very able counsel, they had interpreters. This hearing went on for nearly an hour, and I listened to very protracted and thorough arguments by Ms. Menke on behalf of mother and Ms. Hernandez on behalf of father. … And then when this court gets information that the very night that the court makes the order where they are not to have contact with each other, the court receives notification of a violation. Therefore, I am changing my order[.]"

The court further advised, "If you want to bring in the social worker, you can subpoena he or she for the .26 hearing date, but I'm not going to entertain any interim testimony on this matter." After mother's counsel objected to the denial of her request for a contested hearing, the court responded, "Well, you can have that chance at the .26 hearing. I gave this case an abundance of time last weekend [*sic*]. So I certainly understand

9

mother's objection and her disappointment, as well as father's. But violations of court orders that blatant I have to take action."

On November 17, 2020, mother filed a notice of intent to file a writ petition challenging the November 16, 2020 order; father filed his notice of intent on November 20, 2020. The parents filed separate petitions on February 25, 2021. On March 4, 2021, we issued an order to show cause stating our intent to decide the matter on the merits, and stayed the section 366.26 hearing scheduled for March 15, 2021.

## DISCUSSION

The parents contend the court violated their right to due process by denying them a contested hearing to challenge Becerra's assertion that they violated the court's stay-away order. As noted, the Department takes no position regarding the issues raised by the parents, and N.M.'s counsel did not file a response to the petitions. The parents' due process contentions present an issue of law which we review de novo. (*In re A.B.* (2014) 230 Cal.App.4th 1420, 1434.)

"It is axiomatic that due process guarantees apply to dependency proceedings. [Citations.] Parties to such proceedings have a due process right to confront and cross-examine witnesses, at least at the jurisdictional phase. [Citations.] The essence of due process is fairness in the procedure employed; a meaningful hearing, one including the right to confront and cross-examine witnesses, is an essential aspect of that procedure." (*Ingrid E. v. Superior Court* (1999) 75 Cal.App.4th 751, 756–757; see also *In re J.P.* (2017) 15 Cal.App.5th 789, 800 [due process requires that parents be given the right to cross-examine adversarial witnesses, such as the caseworker and persons whose hearsay statements are contained in the reports].)

10

Due process "is a flexible concept which depends upon the circumstances and a balancing of various factors." (*In re Jeanette V.* (1998) 68 Cal.App.4th 811, 817; see *Sheri T. v. Superior Court* (2008) 166 Cal.App.4th 334, 341.) Even where due process rights are triggered, it must always be determined what process is due. (*In re Malinda S.* (1990) 51 Cal.3d 368, 383, partially superseded by statute as explained in *In re I.C.* (2018) 4 Cal.5th 869, 884–885.) We look to "the private interest that will be affected by the agency's action, the risk of an erroneous deprivation of that interest, the interest in informing parents of the basis for and consequences of the action and in enabling them to present their side of the story, and the agency's interest in expeditious decision making as affected by the burden caused by an additional procedural requirement." (*In re James Q.* (2000) 81 Cal.App.4th 255, 267 (*James Q.*).)

Review hearings are a critical aspect of the dependency system. (*James Q.*, *supra*, 81 Cal.App.4th at p. 262.) "[F]indings made at those hearings often form the basis of an order at the permanent plan hearing terminating parental rights. (§ 366.26, subd. (c).) In order to terminate parental rights, the juvenile court must expressly make two findings: '(1) that there is clear and convincing evidence that the minor will be adopted; and (2) that there has been a previous determination that reunification services shall be terminated.' [Citation.]" (*Ibid.*) "If the child is not returned to the parents at the 18-month review, the court must set the matter for a section 366.26 hearing." (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249.)

With these principles in mind, we are persuaded that due process requires the juvenile court to allow the parents to challenge Becerra's contention that they violated the mutual

11

stay-away order at a contested review hearing. As we explained, at the end of the November 10 hearing, the court ordered the return of the minor to the custody of the parents. It also ordered a mutual stay-away order prohibiting the parents from having contact with one another, except in the exercise of permitted visitation. The court stayed the order returning N.M. to the parents' custody until November 19. When the Department filed its November 12 walk-on request seeking to vacate the court's November 10 order, it relied on new evidence from Becerra. That evidence indicated that at 8:30 p.m. on November 10, Becerra had observed the parents together outside of mother's home in violation of the court's mutual stay-away order.

At the November 16 hearing on the Department's walk-on request, the Department and minor's counsel asked the court to consider this new evidence and reconsider its November 10 order to return the minor to the parents. And the court did exactly that— based on the new evidence, the court vacated its November 10 order returning the minor to the parents and made a new and different order terminating the parents' reunification services and setting a section 366.26 hearing. The November 16 proceeding was for all intents and purposes a further 18-month review hearing, and the court should have scheduled a contested hearing to allow the parents the opportunity to address the new evidence submitted by the Department.[3]

---

[3] Certainly, a juvenile court is vested with broad authority to fashion orders concerning the welfare of a dependent child and, subject to due process, to modify its prior orders as appropriate. (See *M.L. v. Superior Court* (2019) 37 Cal.App.5th 390, 400.)

On this record, we also cannot conclude that the court's reliance on the new evidence was harmless. At the end of the November 16 hearing, the court vacated its November 10 order returning the minor to the parents' custody based *solely* on the new evidence. And the court's finding that the parents violated the mutual stay-away order impacted the proceedings in other ways—the court denied the parents reunification services and set the matter for a section 366.26 hearing to terminate their parental rights.

To be sure, in acknowledging the parents' requests for an opportunity to cross-examine Becerra and challenge her reported observations of the parents being seen together, the court responded that while it was "not going to entertain any interim testimony on this matter," they could "subpoena [the social worker] for the [section 366].26 hearing date." But the hearing under section 366.26 takes place *after* the juvenile court finds that the parents are unfit and the child cannot be returned to them. (*In re Grace P.* (2017) 8 Cal.App.5th 605, 611.) And if "the court has found the child likely to be adopted [at the section 366.26 hearing], the burden shifts to the parents to show exceptional circumstances exist such that termination [of parental rights] would be detrimental to the child." (*Ibid.*) Stated another way, the legal issues to be decided by the court at the section 366.26 hearing are whether the minor is adoptable and if there are any exceptions to the termination of parental rights, not whether the minor should be returned to the parents' custody. As such, evidence regarding the observations of the social worker of the parents being together on November 10 would be irrelevant. We therefore agree with the parents that the

13

ability to cross-examine the social worker at the section 366.26 hearing is an inadequate remedy.

Accordingly, we reverse the court's November 16, 2020 order. On remand, the court shall conduct a contested hearing to allow the parents to challenge the Department's new evidence. At this hearing, the parties can address the facts as they existed at the time of the November 16, 2020 proceeding, as well as any subsequent developments. (See *In re Ryan K.* (2012) 207 Cal.App.4th 591, 597 [on remand, juvenile court may consider matters that transpired while the appeal was pending].)

## DISPOSITION

The petitions for extraordinary relief are granted. A peremptory writ of mandate shall issue directing the juvenile court to reverse its November 16, 2020 order. On remand, the court shall conduct a contested hearing consistent with the views expressed in this opinion. This opinion is final immediately upon filing. (Cal. Rules of Court, rule 8.490(b)(2)(A).)


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.

15