Filed 6/12/23  In re Gabriella H. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| IN RE GABRIELLA H. et al., Persons Coming Under the Juvenile Court Law. | B315796 (Los Angeles County Super. Ct. No. 20CCJP01554) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHASTITY B.,<br><br>    Defendant and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County, Tara Newman, Judge.  Affirmed in part and conditionally affirmed in part with directions.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant Chastity B.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

This consolidated appeal concerns three juvenile court orders. First, Chastity B. appeals from an order under Welfare and Institutions Code section 366.26 terminating her parental rights to her daughters, Gabriella H. and Gracie H.[1] Chastity argues the juvenile court erred in ruling the parental-benefit exception under section 366.26, subdivision (c)(1)(B)(i), did not apply. We affirm the court's order because Chastity failed to prove she maintained regular visitation and contact with her daughters.

Second, Chastity appeals from an order denying a petition under section 388 seeking to modify a visitation order regarding Gabriella and Gracie. Because Chastity makes no argument regarding that order, we affirm it too.

Finally, Chastity appeals from an order denying a petition under section 388 regarding placement of her youngest child, Ramon T., Jr. She argues the Los Angeles County Department of Children and Family Services did not comply with the inquiry and notice requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law. The

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

Department concedes, and we agree, it did not comply with ICWA and related California law because it did not conduct an adequate inquiry into Ramon, Jr.'s possible Indian ancestry or provide adequate notice to the relevant tribe. Therefore, we conditionally affirm the court's order regarding Ramon, Jr. and direct the juvenile court to ensure the Department complies with its duties under ICWA and related California law.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Juvenile Court Declares Gabriella and Gracie Dependent Children, Terminates Chastity's Reunification Services, and Schedules a Hearing Under Section 366.26*

Chastity previously appealed from juvenile court orders denying certain section 388 petitions concerning Gabriella's and Gracie's placement and a disposition order concerning Chastity's daughter, Hailey T., who is not the subject of these appeals. Our previous opinion provided a detailed factual and procedural background regarding the juvenile court's jurisdiction findings and disposition orders concerning Gabriella and Gracie. (See *In re Gabriella H.* (Aug. 12, 2022, B313276) [nonpub. opn.] (*Gabriella H. I*).) As we explained, Chastity was at the time the mother of four children: Isabella, Gabriella, Gracie, and Hailey, ranging in age from 15 years old (Isabella) to two years old (Hailey). Isabella's father is not the father of Chastity's other children and he, like Isabella, is not a party to these proceedings. Gabriella and Gracie's father is Moises H.; Hailey's father is Ramon T. Since Chastity's first appeal she had another child,

3

Ramon, Jr., who is now 18 months old and whose father is also Ramon.

In March 2020 the juvenile court issued a removal order for Gabriella, Gracie, and newborn Hailey and placed Gabriella and Gracie with their paternal grandparents. At that time, Gabriella and Gracie were six and four years old, respectively. Hailey was placed with her father, but the Department later detained Hailey from Ramon following his incarceration for a domestic violence incident involving Chastity. In February 2021 the juvenile court sustained a petition on behalf of Gabriella, Gracie, and Hailey under section 300, subdivisions (a), (b), and (j). In May 2021 the juvenile court declared Gabriella, Gracie, and Hailey dependent children of the court and removed them from their parents. On December 10, 2021 the court terminated Chastity's reunification services regarding Gabriella, Gracie, and Hailey and scheduled a permanency planning hearing under section 366.26. Throughout Gabriella and Gracie's placement with their paternal grandparents, the children thrived and expressed their desire to remain with their grandparents. The Department reported that the paternal grandparents provided the girls a "safe, stable, loving and nurturing home environment."

B. *Chastity Visits Gabriella and Gracie Inconsistently*

In March 2020, when the juvenile court issued the removal order for Gabriella and Gracie, the court granted Chastity two, two-hour monitored visits each week. In December 2020, the Department reported that Chastity visited Gabriella and Gracie only once every other week for two hours, or one-quarter of the opportunities for visitation the court granted.

4

Following the disposition hearing in May 2021 the juvenile court increased Chastity's weekly visitation to three, three-hour visits. The Department did not finalize Chastity's visitation schedule until July 2021 because of difficulties caused by "the animosity between [Chastity] and [the] paternal grandparents." At a visit monitored by the paternal grandfather in early October 2021, Chastity yelled at him about the girls' backpacks, their homework, and the food he provided. After that visit Gabriella and Gracie's paternal grandfather told the Department he did not feel safe at visits without Department staff present, and the juvenile court ordered future visits to take place at the Department's office.

In October 2021 Chastity gave birth to Ramon, Jr. and was hospitalized for several days. Between Chastity's hospitalization in late October and the end of November 2021, Chastity visited with Gabriella and Gracie once. Between late 2021 and early 2022, Chastity's visits with Gabriella and Gracie continued to be "sporadic."

Beginning in February 2022, the Department changed Chastity's visits back to two, two-hour visits per week. From that time, and leading up to the section 366.26 hearing in August 2022, Chastity's visits with Gabriella and Gracie were more consistent. Out of 24 visits (not including scheduled visits that were canceled due to the children's or Chastity's illness), Chastity canceled three visits and left one visit early.

C.    *This Court Directs the Juvenile Court To Ensure the Department Complied with Its Duties Under ICWA and California Law*

As described in *Gabriella H. I*, *supra*, B313276, Hailey's paternal aunt Vanessa T. told a dependency investigator Hailey's paternal great-grandfather "came from the Yaqui tribe, but he was not registered with the tribe." Vanessa did not know the paternal great-grandfather's name and did not have additional information about him, but she gave the investigator the name and phone number of the paternal great-grandfather's sister. Vanessa also gave the investigator the names and birth dates (but not birth years) of Hailey's paternal grandfather (who was deceased) and paternal grandmother, as well as the place where the paternal grandfather died. The investigator called the sister of Hailey's paternal great-grandfather twice and left messages, but the sister did not respond. The record did not indicate the investigator attempted to contact Hailey's paternal grandmother.

The dependency investigator sent ICWA-030 notices on behalf of Hailey to the Pascua Yaqui tribe and to the Bureau of Indian Affairs. The notices included the name and address of Hailey's father and the names (but not the (partial) dates or places of birth) of Hailey's paternal grandparents. The notices also included an address in Los Angeles for Hailey's paternal grandmother, but no information about Vanessa or Hailey's paternal great-grandfather's sister. The investigator also contacted the Pascua Yaqui tribe by phone. On August 20, 2020 the Pascua Yaqui tribe notified the Department that Hailey, Chastity, and Ramon were not members of the tribe and did not have any pending applications for membership. Based on the

6

information the Department provided, the Pascua Yaqui tribe concluded Hailey was not eligible for membership in the tribe.

At Hailey's May 27, 2021 disposition hearing the court found there was no reason to know Hailey had Indian ancestry. Chastity appealed, arguing the Department failed to conduct an adequate inquiry into Hailey's possible Indian ancestry and to provide adequate notice to the Pascua Yaqui tribe. We agreed and directed the juvenile court to ensure the Department complied with its duties under ICWA and related California law. (*Gabriella H. I*, *supra*, B313276.)

D.  *The Juvenile Court Finds There Was No Reason To Know Ramon, Jr. Had Indian Ancestry and Declares Him a Dependent Child of the Court*

Meanwhile, on February 1, 2022 the juvenile court sustained a petition under section 300, subdivisions (b), (d), and (j), on behalf of Ramon, Jr., who had a positive toxicology for marijuana at birth. The court also found, based on a notice from the Pascua Yaqui tribe stating Ramon, Jr. was not eligible for membership in the tribe, the court had no reason to know or believe Ramon, Jr. was an Indian child. On March 1, 2022, before our decision in *Gabriella H. I*, the juvenile court declared Ramon, Jr. a dependent child of the court, removed him from parental custody, and denied Chastity reunification services. The court placed Ramon, Jr. in foster care.

7

E.      *The Juvenile Court Terminates Chastity's Parental Rights to Gabriella and Gracie and Denies Chastity's Petition Under Section 388 To Modify Ramon, Jr.'s Placement*

At the August 30, 2022 section 366.26 hearing for Gabriella and Gracie, counsel for the children asked the juvenile court to terminate Chastity's and Moises's parental rights. Counsel for the children acknowledged Chastity had "a connection" with Gabriella and Gracie, but argued the benefits of permanence for the children "far outweigh the benefit of any continuing parent/child relationship." Failing to terminate parental rights, he continued, would result in "continued instability in their lives [and] continued inconsistent visits with [Chastity]." Counsel for Chastity asked the court to find the parental-benefit exception applied and argued Chastity had "maintained consistent visitation . . . for quite some time." Counsel for the Department acknowledged Chastity's visits appeared to be "somewhat consistent," but argued the parental-benefit exception did not apply because Chastity had not shown terminating her parental rights would be detrimental to Gabriella and Gracie.

The juvenile court found that Gabriella and Gracie were adoptable and that the parental-benefit exception did not apply because the benefit of the children's permanency far outweighed maintaining any connection with their parents. On the issue of Chastity's visitation, the court said "the visits that she does have when she is present are generally positive, but there have [also been] inconsistencies in her visitation." The court also denied a section 388 petition Chastity had filed on August 26, 2022 asking the court to modify its previous order placing Ramon, Jr. with a non-relative caregiver to place him with Chastity instead.

F.    *Chastity Timely Appeals*

Chastity filed two timely notices of appeal from the three orders on two dates (we consolidated the appeals).  First, Chastity appealed from the October 8, 2021 order regarding the section 388 petition Chastity filed to modify her visitation with Gabriella.  Chastity makes no argument regarding that order.  Second, Chastity appealed from two August 30, 2022 orders, one that terminated her parental rights over Gabriella and Gracie and one that denied her section 388 petition asking the court to change its order placing Ramon, Jr. with a non-relative caregiver.[2]

**DISCUSSION**

A.    *The Juvenile Court Did Not Err in Ruling the*
       *Parental-benefit Exception Did Not Apply*

       1.    *Applicable Law and Standard of Review*

The purpose of a hearing under section 366.26 is "'to select and implement a permanent plan for the child'" after the juvenile court has terminated reunification services.  (*In re Caden C.* (2021) 11 Cal.5th 614, 630 (*Caden C.*); see *In re D.M.* (2021) 71 Cal.App.5th 261, 268.)  If the court determines "the child is likely to be adopted," the court must "terminate parental rights to allow for adoption."  (*Caden C.*, at p. 630; see § 366.26, subd. (c)(1).)  "But if the parent shows that termination would be

---

[2]    Moises did not oppose termination of his parental rights, and neither he nor Ramon T. appealed from the orders addressed in this appeal.

9

detrimental to the child for at least one specifically enumerated reason, the court should decline to terminate parental rights and select another permanent plan." (*Caden C.*, at pp. 630-631; see § 366.26, subd. (c)(1)(B), (4)(A).) One of those reasons, the parental-benefit exception, requires the parent to establish by a preponderance of the evidence (1) "the parent has regularly visited with the child," (2) "the child would benefit from continuing the relationship," and (3) "terminating the relationship would be detrimental to the child." (*Caden C.,* at p. 629; see § 366.26, subd. (c)(1)(B)(i); *D.M.*, at p. 268.)

"The first element—regular visitation and contact—is straightforward. The question is just whether 'parents visit consistently,' taking into account 'the extent permitted by court orders.'" (*Caden C.*, *supra*, 11 Cal.5th at p. 632; accord, *In re A.L.* (2022) 73 Cal.App.5th 1131, 1151; see *In re I.R.* (2014) 226 Cal.App.4th 201, 212 ["Regular visitation exists where the parents visit consistently and to the extent permitted by court orders."].) "Visits and contact 'continue[ ] or develop[ ] a significant, positive, emotional attachment from child to parent.' [Citation.] Courts should consider in that light whether parents 'maintained regular visitation and contact with the child' [citation] but certainly not to punish parents or reward them for good behavior in visiting or maintaining contact—here, as throughout, the focus is on the best interests of the child." (*Caden C.*, at p. 632; accord, *In re Eli B.* (2022) 73 Cal.App.5th 1061, 1069-1070.) Thus, "the visitation element is to be understood in light of the overall purpose of the beneficial relationship exception." (*Eli B.*, at p. 1070.)

A juvenile court decision that a parent has not satisfied his or her burden to establish the parental-benefit exception applies

"may be based on any or all of the component determinations," including "whether the parent has maintained regular visitation." (*In re Breanna S.* (2017) 8 Cal.App.5th 636, 646-647, disapproved on another other ground in *Caden C.*, *supra*, 11 Cal.5th at pp. 637, fn. 6, 638, fn. 7.) Indeed, "a parent must prove *all three* components of the beneficial relationship exception," and a "failure of proof on any one of them is fatal." (*In re Katherine J.* (2022) 75 Cal.App.5th 303, 322, fn. 10; see *In re Eli B.*, *supra*, 73 Cal.App.5th at p. 1068 [where the father did not meet his burden to prove he maintained regular visitation, the reviewing court need not consider the other elements of the parental-benefit exception].)

We review the juvenile court's ruling on the first element of the parental-benefit exception for substantial evidence. (*Caden C.*, *supra*, 11 Cal.5th at p. 640; *In re Eli B.*, *supra*, 73 Cal.App.5th at p. 1068.) In reviewing factual determinations for substantial evidence, we do not "'reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.'" (*Caden C.*, at p. 640.)

### 2. *Chastity Failed To Show She Regularly Visited Gabriella and Gracie*

Chastity argues she satisfied the first element of the parental-benefit exception because the "overall evidence" showed she regularly visited Gabriella and Gracie. She contends the "relevant question is not whether there was some period of inconsistent visitation, rather the question is whether the visitation was consistent 'overall.'" But that's not the standard the Supreme Court established in *Caden C.* The "relevant question" is whether Chastity visited "'consistently,' taking into

11

account 'the extent permitted by court orders.'" (*Caden C., supra*, 11 Cal.5th at p. 632; accord, *In re Eli B., supra*, 73 Cal.App.5th at p. 1069.)

Chastity concedes she did not. She characterizes her visitation as inconsistent from March 2020, when Gabriella and Gracie were detained, until the disposition hearing in May 2021; consistent from May 2021 to October 2021; inconsistent again from October 2021 to January 2022; then consistent from February 2022 until the section 366.26 hearing in August 2022. Thus, even in Chastity's view of the evidence, her visitation with Gabriella and Gracie was inconsistent for approximately 18 of the 29 months between the girls' detention and the section 366.26 hearing. It is hard to see how this level of visitation could be characterized as consistent "overall"; a more apt description is inconsistent overall, or simply, inconsistent. In any event, there was ample evidence Chastity failed to maintain regular visitation to the extent permitted by the juvenile court. (See *In re M.M.* (2022) 81 Cal.App.5th 61, 68 [visitation was inconsistent where "the reports relied upon by the court thoroughly discussed the infrequency of mother's visits, and the many visits that had been made available to her that she missed or canceled"], review granted Oct. 12, 2022, No. S276099; *In re Eli B., supra*, 73 Cal.App.5th at pp. 1070-1071 [father failed to show regular visitation where his visitation "throughout the years-long dependency proceeding was sporadic and also entailed significant gaps"]; *In re Breanna S., supra*, 8 Cal.App.5th at p. 647 [sporadic visits in the first 18 months of the dependency proceedings, coupled with more regular visits during the final six months before the section 366.26 hearing, were not sufficient to show regular visitation]; *In re I.R., supra*, 226 Cal.App.4th at p. 212

["significant lapses in visits" showed the parent failed to maintain regular visitation].)

Neither of the two cases Chastity cites for the proposition "overall" consistency is enough supports that position. First, Chastity plucks the word "overall" from *In re C.F.* (2011) 193 Cal.App.4th 549, where the court held that, while the mother's visitation became "more consistent . . . as the section 366.26 hearing neared," "*overall* her visitation was sporadic." (*Id.* at p. 554, italics added.) The court in *C.F.* continued: "Sporadic visitation is insufficient to satisfy the first prong of the parent-child relationship exception to adoption." (*Ibid.*) Moreover, the parent in *C.F.* took advantage of more than half of her permitted visits, a stronger visitation record than Chastity's, but still failed to satisfy the first element of the parental-benefit exception.

Second, Chastity cites *In re G.H.* (2022) 84 Cal.App.5th 15, apparently because the court in that case acknowledged "the prongs of the [parental-]benefit exception . . . naturally inform and lead into each other. Whether a parent or parents' regular *visitation and contact* (the first prong) builds a *relationship* that is *beneficial* to the child (the second prong) depends on the nature and quality of the visits." (*Id.* at p. 26.) Chastity seems to suggest the juvenile court may apply the parental-benefit exception on a sliding scale of visitation, with less consistency required where the parental relationship is arguably more beneficial to the child. As the court in *In re G.H.* explained in the next sentence of its opinion, however, it is the consistency of a parent's visitation that develops "'a significant, positive, emotional attachment from child to parent.'" (*Id.* at pp. 26-27.) Without regular visitation, a parent cannot show a beneficial relationship. (See *Caden C., supra*, 11 Cal.5th at p. 632 [regular

visits and contact are necessary to continue or develop a significant, positive, and emotional attachment between parent and child]; *In re Grace P.* (2017) 8 Cal.App.5th 605, 614 ["evidence of the nature of the visits would be ineffective in proving a beneficial parent-child relationship, where the parent failed to maintain consistent and frequent contact with the child"].) Because Chastity did not meet her burden to prove she maintained regular visitation and contact with Gabriella and Gracie, she has not shown the juvenile court erred in failing to apply the parental-benefit exception to the termination of her parental rights. We need not address her arguments the juvenile court erred in analyzing the other factors of the parental-benefit exception. (See *In re Eli B.*, *supra,* 73 Cal.App.5th at p. 1068 [court need not address arguments regarding the second and third elements of the parental-benefit exception if the parent fails to prove the first element].)

B.   *The Department Did Not Comply with ICWA and Related California Law Regarding Ramon, Jr.*

Chastity contends the ICWA-030 notice submitted on behalf of Ramon, Jr. included the same deficiencies we identified with Hailey's ICWA-030 notice.[3] (See *Gabriella H. I*, *supra,*

---

[3]    Chastity argues we can consider whether the Department complied with its duties under ICWA and California law in her appeal from the juvenile court's order denying her section 388 petition because "Ramon, Jr.'s continued foster care placement was at issue." In *In re Isaiah W.* (2016) 1 Cal.5th 1 the Supreme Court held an appellate court may review a juvenile court's compliance with ICWA in an appeal from any order that "was necessarily premised on a *current* finding by the juvenile court

14

B313276.) The Department concedes, and we agree, the juvenile court failed to ensure the Department fulfilled its obligation to conduct an adequate inquiry under ICWA and related California law regarding Ramon, Jr. We also accept the Department's concession that remand is appropriate to allow the Department to conduct a proper inquiry and to allow the juvenile court to ensure the Department conducts such an inquiry.

that it had no reason to know [a child] was an Indian child and thus ICWA notice was not required." (*Id*. at p. 10.) The Department does not challenge Chastity's position; there are no published cases addressing whether a juvenile court's order denying a section 388 petition regarding placement is "necessarily premised" on a finding that notice under ICWA was not required. (See § 224.3, subd. (a) [requiring ICWA notice "for hearings that may culminate in an order for foster care placement, termination of parental rights, preadoptive placement, or adoptive placement"].) We do not express an opinion on this issue.

## DISPOSITION

The juvenile court's October 8, 2021 order denying Chastity's section 388 petition and the court's August 30, 2022 order terminating Chastity's parental rights to Gabriella and Gracie are affirmed. The juvenile court's August 30, 2022 order denying Chastity's section 388 petition asking the court to change its order placing Ramon, Jr. with a non-relative caregiver is conditionally affirmed. The juvenile court is directed to ensure the Department complies fully with the inquiry and notice provisions of ICWA and related California law regarding Ramon, Jr.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.

16