Filed 3/13/24  In re S.R. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| In re S.R., a Person Coming Under the Juvenile Court Law. | C098602 |
| SUTTER COUNTY HEALTH AND HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. N.R., Defendant and Appellant. | (Super. Ct. No. DPSQ210000026) |

Mother N.R. appeals the juvenile court's order terminating her parental rights and freeing the minor S.R. for adoption.  (Welf. & Inst. Code,[1] § 366.26.)  Mother alleges broadly that her rights to due process were violated because she did not have a meaningful and fair process leading up to the termination of her parental rights.  We discern no due process violation.  Moreover, to the extent mother's arguments could be

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

1

construed as an ineffective assistance of counsel claim,[2] we find no prejudice because it is not reasonably probable that the result of the proceeding would have been different had mother's counsel argued for an exception to the statutory preference for adoption. (See, e.g., *In re Caden C*. (2021) 11 Cal.5th 614.) Accordingly, we will affirm the juvenile court orders.

## I. BACKGROUND

A. *The Proceedings Through the Termination of Reunification Services*

S.R. and her half brother C.R. (collectively the "children") came to the attention of the Sutter County Health and Human Services Department (Department) in April 2021 after C.R. found a loaded syringe in mother's car leading to an investigation wherein mother admitted her addiction to methamphetamine and unaddressed mental health problems. The Department filed a juvenile dependency petition alleging S.R. and C.R. were dependent children under section 300, subdivisions (a), (b), and (g). Mother was represented by attorney Philippa Lauben at the detention hearing. The juvenile court detained the children and provided supervised, in-person visitation for one hour, three times weekly between children and mother.

Mother was represented by attorney Kelsi Wheeler at the May 18, 2021, jurisdictional hearing at which mother submitted on the Department's jurisdictional report. The juvenile court determined the allegations in the jurisdiction petition were true and increased visitation between mother and children to two hours, three times a week with the second hour being open to extended family. Mother was directed not to discuss the case with the children. On May 25, 2021, the juvenile court granted the Department's

---

[2] We acknowledge mother's reply brief disavows any ineffective assistance of counsel claim. However, because mother's factual arguments do suggest such a claim and in order to avoid a claim of ineffective assistance of appellate counsel on this issue, we will explain why mother cannot demonstrate prejudice arising from the claimed deficiencies of her attorney.

request to change visitation with mother, ordering three, 90-minute visits weekly, without other family present due to problems with family visitation.

The Department's June 2021 disposition report reflected mother's failure to complete her intake for services/case planning and problematic behavior during visits with the children, including discussing the case, calling C.R. a liar, yelling at the staff, and refusing to leave visits requiring police intervention. At the disposition hearing on June 15, 2021, mother's attorney (Wheeler), asked the court to have her client sign her case plan and start participating in services to facilitate the return of her children. Thereafter, the court adopted the Department's recommended findings and orders, including that mother would receive reunification services. Visits would remain virtual until mother demonstrated an ability to control her emotions during visits.

The Department's December 2021 six-month review report recommended additional reunification services, but reflected that mother continued to test positive for methamphetamine and had been discharged from two substance abuse treatment programs. Mother (who was then in treatment) did not attend the December 14, 2021, six-month review hearing, but was represented at the hearing by attorney Wheeler who submitted on the report, and the juvenile court followed the recommendations of the Department.

The Department's April 2022 12-month review report recommended continuing mother's reunification services given her recent strides toward complying with her case plan. Mother had a signed visitation safety plan and overnight visits were scheduled to begin later that month. Mother appeared with attorney Wheeler at the April 21, 2022, 12-month review hearing and requested the immediate return of the children given her recent strides and alternatively that a three-month review be set to track her positive progress. She otherwise submitted on the report. The juvenile court followed the Department's recommendations and set the matter for a three-month review to assess progress towards

trial home visits. Mother was to receive three, one-hour visits weekly, "contingent upon mother not appearing under the influence of drugs or alcohol."

On June 20, 2022, the Department filed a section 388 petition for modification, asking the court to terminate mother's reunification services and find visitation with mother detrimental. Mother was discharged from her treatment program for breaking the rules, including substance abuse, on April 22, 2022. In May, mother failed to attend drug tests and when she was tested, she tested positive for amphetamines and methamphetamines. Finally, mother had been suicidal during an unsupervised overnight visit with the children, saying her "final goodbyes" to them.

A previously scheduled interim review hearing occurred on July 14, 2022, and mother was initially represented by attorney Wheeler. Mother's *Marsden*[3] motion to replace her counsel was granted by the juvenile court, which found there had been an "irreparable breakdown in the relationship" with attorney Wheeler, and attorney Richard Thomas was appointed to represent her. The court then continued the Department's section 388 motion to allow attorney Thomas to come up to speed. Mother had not conferred with attorney Thomas by the July 28, 2022, hearing, and the matter was continued to August 11, 2022, with an order for attorney Thomas to meet with mother and appear at that hearing under threat of possible sanctions. On August 11, 2022, attorney Thomas represented mother at the section 388 motion hearing wherein the juvenile court denied the Department's request to terminate services, but did reduce visitation with S.R. to one visit per week for up to one hour.

The Department's October 2022 18-month review report recommended terminating mother's reunification services with S.R. and that a permanent placement hearing pursuant to section 366.26 should be scheduled in light of mother's

---

[3]    *People v. Marsden* (1970) 2 Cal.3d 118.

4

decompensation and noncompliance with her case plan, including drug use, starting around May 2022. As to S.R.'s half brother, the Department recommended dismissing C.R.'s dependency case and that physical custody of C.R. be granted to his biological father D.M.

Attorney Thomas did not attend the 18-month review hearing on October 20, 2022. Mother was instead represented by attorney James Vasquez, who specially appeared on attorney Thomas's behalf. Attorney Vasquez discussed the matter with mother, who agreed to submit on the Department's recommendation. Thereafter, the juvenile court followed the Department's recommendations as to both children, including the termination of reunification services to mother. The maternal grandmother interrupted the proceedings and during the commotion that followed, mother stated she was confused about what was going on and asked whether her "rights" were being terminated. Attorney Vazquez told mother they were not, and mother interjected that she wanted S.R. to go live with her uncle in Nebraska, but "[the judge] keeps mentioning adoption and termination." The juvenile court paused the hearing and asked if attorney Vasquez needed to confer with mother. Before he could, mother stated she wanted her services terminated so that S.R. could live with relatives in Nebraska. Attorney Vasquez confirmed that was what was happening, and S.R.'s counsel reiterated S.R.'s request that the move occur during Christmas break. Mother was advised that to appeal the termination of her services it would be necessary to file an extraordinary writ. She did not do so.

B.     *The Termination and Selection of Adoption as a Permanent Plan*

The Department's January 2023 section 366.26 report recommended the termination of parental rights and the freeing of S.R. for adoption. S.R. had been cared for by her prospective adoptive parent (a paternal relative) in Nebraska since December 8, 2022. The prospective adoptive parent had known S.R. since birth, had a "strong relationship" with her, and was committed to adoption. S.R. reported a "positive

5

connection" with her prospective adoptive parent, but worried "about how her adoption would impact her mother." The California adoptions specialist opined termination of parent rights would not be detrimental because S.R. "has been unable to rely on the mother for security and safety" and her "need for a stable home with a mentally sound and nurturing caregiver outweigh keeping the legal rights of the parent intact." The Department similarly opined delaying permanency was not in S.R.'s best interests despite her mother's love for her. The report did not expressly discuss the application of any exceptions to adoption as the permanent plan.

The Adoptions Services Bureau's adoption assessment attached to the section 366.26 report did evaluate the amount and nature of contact between S.R. and mother at length, but without input from mother who had failed to respond to attempts to interview her. The assessment concluded S.R.'s relationship with her mother was detrimental to S.R. "There is a prevailing sense of ambivalence and sorrow by the child. There would be no benefit from continuing the relationship due to the negative effect of interaction between the parent and the child, the child's young age, and the child's having learned to take responsibility for her mother's feelings as a way to remain close to her." Therefore, the assessment concluded the beneficial parental relationship exception to adoption did not apply.

Moreover, the adoption assessment noted S.R. and her half brother C.R. "share[d] common and significant experiences" and had "close and strong bonds" with each other. C.R. lived with his biological father in Nebraska, and the pair had visited several times since S.R.'s placement with other relatives in Nebraska. The caregivers intended to continue informal visits.

The section 366.26 hearing originally scheduled for February 9, 2023, was continued so that father's newly appointed counsel (attorney Vasquez) could confer with him. Attorney Thomas did not appear at this hearing, and mother was represented by attorney Donald Walberg, Jr., specially appearing on attorney Thomas's behalf. The

6

section 366.26 hearing was continued again on March 9, 2023, in response to attorney Thomas's request because he had not had the opportunity to discuss the Department's report with mother.

At the start of the March 16, 2023, termination and selection hearing (§ 366.26), attorney Thomas was not yet present, but was expected to arrive within 45 minutes. S.R.'s biological father was appearing virtually from custody, and the parties agreed to hear father's portion of the matter first to preserve his right to be heard while they waited for attorney Thomas. The Department, in accordance with its January 2023 report, recommended termination of parental rights and selection of a permanent plan of adoption. The courtroom (in person and virtually) was then cleared to allow father to confer with counsel. Attorney Thomas was virtually present when the hearing resumed. Both the Department and S.R.'s counsel requested the court follow the Department's recommendation.

Attorney Thomas then reported he had met at length with mother and there were no bases to contest the Department's recommendation. He continued, "She is, however, I should alert the Court, she's doing very well at Teen Challenge. She's doing very well in her sobriety. She is late to the game but she's putting her effort into it. [¶] She's going to focus now on that and hopefully familial, or familiar adoption that allowed her to have contact with a daughter that knows she exists and is old enough to remember her and is going to come looking for her no matter what we do in four or five years. [¶] So she's putting herself in a position to be prepared for that. I think the Court should have some confidence in her right now. We'd like to make sure that there is that last visit arranged, please." Attorney Thomas then submitted the matter. Father's attorney represented that he was happy with S.R.'s placement and would not be objecting.

Thereafter, prior to ruling, the juvenile court complimented mother on how well she looked. The court then followed the Department's recommendation to terminate parental rights and select adoption as S.R.'s permanent plan. After scheduling the next

hearing date, the court again complimented mother, stating, "I'm really sincere in telling you how well you look.  And just keep up this good work.  It's a hard, hard fight.  You know that.  It just takes your main focus of every single minute.  Okay."

Mother timely appealed.

## II.  DISCUSSION

Mother requests reversal of the juvenile court's order terminating her parental rights and remand for further proceedings consistent with due process.  Having carefully reviewed the record, we discern no due process violation.  Further, to the extent mother's complaints might be construed as asserting a claim that she received ineffective assistance of counsel at the section 366.26 hearing, she has waived this argument by failing to appropriately raise it.  (See, e.g., Cal. Rules of Court, rule 8.204(a)(1)(B) [each brief must "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation to authority"]; *People v. Stanley* (1995) 10 Cal.4th 764, 793 [recognizing waiver of arguments unsupported by citation to authority].)  Nonetheless, we exercise our discretion to reach the merits.

A.      *Legal Principles*

A parent has a right to " 'due process' " at a section 366.26 hearing for termination of parental rights.  (*In re J.S.* (2017) 10 Cal.App.5th 1071, 1081.)  This includes, "a meaningful opportunity to be heard, present evidence, and confront witnesses."  (*In re Grace P.* (2017) 8 Cal.App.5th 605, 612.)  Just what amount of process is due " 'is a flexible concept which depends upon the circumstances and a balancing of various factors.' "  (*In re J.S.*, at p. 1081.)

At a section 366.26 hearing, the juvenile court must determine by clear and convincing evidence whether the child is adoptable; and if a child is adoptable, the juvenile court must then terminate parental rights and order the child be placed for adoption unless a statutory exception applies.  (§ 366.26, subd. (c)(1).)  One such

exception is the beneficial parent-child relationship exception, which applies when "[t]he court finds a compelling reason for determining that termination would be detrimental to the child" because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) To establish the beneficial parent-child relationship exception, the parent must show by a preponderance of the evidence three elements: "(1) regular *visitation and contact*, and (2) a *relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child." (*In re Caden C.*, *supra*, 11 Cal.5th at pp. 631, 636.)

Another exception to adoption is the substantial interference with sibling relationship exception. (§ 366.26, subd. (c)(1)(B)(v).) This exception applies if the juvenile court determines "there is a 'compelling reason' for concluding that the termination of parental rights would be 'detrimental' to the child due to 'substantial interference' with a sibling relationship." (*In re Daniel H*. (2002) 99 Cal.App.4th 804, 813.) To establish this exception, the party opposing adoption must show that "terminating parental rights would substantially interfere with the sibling relationship," and if so, the court then "weighs the child's best interest in continuing the sibling relationship against the benefit the child would receive by the permanency of adoption." (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 951-952.) A social services department has no independent duty to analyze whether the sibling exception applies unless that department is advocating for its application. (*In re Megan S.* (2002) 104 Cal.App.4th 247, 252.) A parent claiming an exception to adoption has the burden of proof to establish by a preponderance of the evidence that the exception applies. (*In re Melvin A*. (2000) 82 Cal.App.4th 1243, 1252.)

"[T]o establish a claim for ineffective assistance of counsel, a [person] must show that his or her counsel's performance was deficient and that the defendant suffered prejudice as a result of such deficient performance." (*People v. Mickel* (2016) 2 Cal.5th

9

181, 198; see *Strickland v. Washington* (1984) 466 U.S. 668, 687-692; *In re Darlice C.* (2003) 105 Cal.App.4th 459, 463 [parent whose parental rights have been terminated "has a right to seek review of claims of incompetent assistance of counsel"].) To demonstrate prejudice, a person must show "a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*Mickel*, at p. 198.) Mother need not show it is "more likely than not" that she would receive a more favorable outcome. (*Strickland*, at p. 693.) However, " '[t]he likelihood of a different result must be substantial, not just conceivable.' " (*People v. Jacobs* (2013) 220 Cal.App.4th 67, 75, quoting *Harrington v. Richter* (2011) 562 U.S. 86.)

B.      *Application*

Here, mother complains her right to due process was violated because she did not have a meaningful and fair process prior to the termination of her parental rights. Specifically, she complains she was denied due process "because of the incorrect legal assumptions made by the parties [before] the court" as well as alleged deficiencies in representation at the 18-month review hearing up to the section 366.26 hearing. However, we discern no violation.

As a preliminary matter, mother is procedurally barred from challenging the termination of her reunification services because she failed to file a writ challenging that termination. (§ 366.26, subd. (l)(2).) Moreover, the record clearly shows mother supported the Department's recommendation to terminate her services so that S.R. could be placed with relatives in Nebraska, as relayed by the attorney specially appearing for her assigned counsel and mother's own statements at that hearing. While mother briefly questioned whether her rights were being terminated, she later agreed she had been told her services were being terminated, going as far as to state, "I get that my services are being terminated. Great, awesome, cool. How can we get my daughter to Nebraska so I can get the fuck out of here. I don't want to be here any more than you guys want me."

10

Further, mother's inquiry about visiting S.R. before the move does not equate to a promise that mother's legal right to visitation would never be impacted by termination of her reunification services.**4** Mother's arguments suggesting otherwise are unsupported by the appellate record.

Thereafter, leading up to the termination of her parental rights, mother was afforded the process she was due. Mother received lawful notice of the section 366.26 hearing. Further, this hearing was postponed after mother's attorney (Thomas) was unable to discuss the Department's section 366.26 report with her prior to that hearing. Mother subsequently met with attorney Thomas to discuss the report, and he determined mother did not have a "defense" to the Department's recommendation to terminate mother's parental rights and release S.R. for adoption. Further, while attorney Thomas was not present for the initiation of the section 366.26 hearing, he was present by the time substantive discussion of the matter ensued, and attorney Thomas relayed mother's position to the court, including her request for a last visit with S.R. Accordingly, mother has not shown she was deprived of "a meaningful opportunity to be heard, present evidence, and confront witnesses." (*In re Grace P., supra*, 8 Cal.App.5th at p. 612.) Therefore, we discern no due process violation.

Further, to the extent mother's arguments could be construed as a claim she received ineffective assistance of counsel, she has failed to demonstrate the requisite prejudice that it is reasonably probable that the result of the proceeding would have been different (*People v. Mickel*, *supra*, 2 Cal.5th at p. 198) had mother's counsel argued for

---

**4**     Consistent with the discussion at this hearing, mother and S.R. had a farewell visit prior to her move out of state.

11

an exception to the statutory preference to adoption[5] (*In re Caden C.*, *supra*, 11 Cal.5th at p. 614).

First, as to the beneficial parental relationship exception, the record does not support a finding that S.R. had "a *relationship*" with mother "the continuation of which would *benefit* the child" and that "the termination of parental rights would be *detrimental* to the child." (*In re Caden C.*, *supra*, 11 Cal.5th at pp. 631, 636.) Rather, because mother failed to participate in an interview by the adoptions specialist who evaluated S.R.'s suitability for adoption, resulting in the specialist's uncontroverted conclusion that S.R.'s relationship with mother was detrimental, and because mother presented no evidence to the contrary, mother cannot meet her burden on appeal to establish prejudice from her counsel's failure to make this argument. (*People v. Mickel*, *supra*, 2 Cal.5th at p. 198.)

Similarly, to the extent mother's appellate briefing hints at the possibility that the substantial interference with a sibling relationship exception to the preference to adoption might have applied, the record does not show termination of mother's parental rights would substantially interfere with S.R.'s relationship with C.R. Rather, both children were placed with relatives in Nebraska, those relatives informally provided for sibling visitation, and they intended to continue to do so. Accordingly, it is not reasonably probable that the juvenile court would have determined this exception applied had mother's counsel argued for its application. (See *In re Megan S.*, *supra*, 104 Cal.App.4th

---

[5]    In reaching this conclusion, we disagree with the Department's argument that this claim must be presented by way of a writ of habeas corpus filed concurrently with this appeal. While this methodology is preferred because it allows for the consideration of evidence not included in the appellate record, it is not a condition precedent to bringing such a claim on direct review. (*In re Darlice C.*, *supra*, 105 Cal.App.4th at p. 463 [explaining relief for ineffective assistance will be afforded only on direct review where there is no possible satisfactory explanation for counsel's complained-of action or inaction].)

at p. 254 [no substantial interference where prospective adoptive homes intended to allow sibling contact].)  Thus, mother has not established the prejudice necessary to maintain an ineffective assistance of counsel claim.  (*People v. Mickel*, *supra*, 2 Cal.5th at p. 198.)

Finally, to the extent mother's arguments suggest her counsel and the juvenile court improperly relied upon mother's ability to maintain a relationship with S.R. when determining that the statutory preference for adoption applied, we disagree.  First, the record does not support the assertion that mother's counsel or the juvenile court relied on mother's ability to maintain a relationship with S.R.  Rather, after acknowledging mother had no defense, mother's counsel simply highlighted her recent strides toward sobriety and the reality that mother would need to maintain the progress if she wanted to have a relationship with S.R. in the future (either through the prospective adoptive parent or when S.R. grew to an age where she would seek out mother of her own accord).  Thereafter, the juvenile court simply complimented mother on how well she looked, repeated the compliment, and encouraged mother to "keep up this good work" and "hard fight" presumably to maintain her sobriety.  Moreover, while some of the juvenile court's comments were made prior to making the necessary findings and orders required by law, they were not made in connection with the consideration of any exceptions to the preference to adoption.  In light of the lack of evidence supporting an exception to adoption, neither the juvenile court, nor the parties raised, discussed, or considered exceptions to adoption at the section 366.26 hearing.  Thus, the juvenile court's encouraging comments cannot be construed as reliance upon mother's ability to maintain a relationship with S.R. in order to determine that an exception to adoption did not apply.  (See, e.g., *In re Caden C.*, *supra*, 11 Cal.5th at p. 633 [when evaluating the applicability of the beneficial parental relationship exception to adoption the juvenile court must assess the detriment from terminating parental rights by assuming the parental relationship will also be terminated].)

Similarly, the Department's inclusion of a statement encouraging mother "to keep working toward sobriety and wellness, so that she may continue to have a relationship with [S.R.], in a manner that is safe for all parties" does not show the Department was *relying* on mother's ability to continue visiting S.R. when it recommended the termination of parental rights and the freeing of S.R. for adoption. Rather, as previously explained, this report attached the uncontroverted assessment of an adoptions specialist opining an exception to adoption did not apply and recommending the minor be released for adoption. This specialist specifically found "the termination of parental rights would not be detrimental to the child. The benefit of maintaining contact with the birth parents does not outweigh the benefit of permanency through adoption and the child's timely exit from the foster care system." In sum, mother has not shown the court or parties relied upon an unenforceable promise that mother would be permitted to maintain visitation with S.R. following termination of parental rights and the freeing of S.R. for adoption. Thus, she has not demonstrated error.

### III. DISPOSITION

The juvenile court orders are affirmed.

/s/
Ashworth J.*

We concur:

/s/
Robie, Acting P. J.

/s/
Duarte, J.

---

*       Judge of the El Dorado County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.